**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 15, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

IMAD ABDULMUNIM DAOUD,

Petitioner,

v.

ALBERTO R. GONZALES,
Attorney General,

Respondent.

No. 05-9586
(No. A96-195-764)
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY** and **EBEL,** Circuit Judges, and **KANE,**[**] District Judge.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]    The Honorable John L. Kane, Senior District Judge, United States District Court for the District of Colorado, sitting by designation.

Petitioner Imad Abdulmunim Daoud seeks review of the Board of Immigration Appeals' (BIA's) decision affirming an Immigration Judge's (IJ's) removal order. We grant the petition and remand for further proceedings.

## BACKGROUND

Daoud is a Sunni Muslim from Baghdad, Iraq. In 1982, at the age of eighteen, he was admitted to the United States on a nonimmigrant student visa with authorization to remain for six months. Daoud overstayed his visa, fearing military conscription and the government of Sadaam Hussein, which he had criticized in this country.

In 2002, the former Immigration and Naturalization Service ordered Daoud to show cause why he should not be removed to Iraq for staying in this country without authorization. On March 6, 2003, Daoud appeared before an IJ and applied for asylum and restriction on removal, claiming that because he had lived in the United States for so long, he would be viewed by the Hussein government as a spy, and would be tortured, imprisoned, and possibly killed if removed. In April 2003, United States and coalition forces militarily overthrew Hussein's regime.

In November 2004, an IJ held a hearing on Daoud's asylum application. Daoud testified that he now feared returning to Iraq because terrorists would target him "for being an outsider and being a snitch to the U.S." Admin. R. at

-2-

175. Daoud also testified that his close friend, Aban Elias, an Iraqi-born U.S. citizen, returned to Iraq in 2003 to help rebuild the country and was kidnapped by terrorists. One of Daoud's U.S.-born friends testified about Elias being shown on television by his kidnappers and about Daoud's fear that he too might be kidnapped in Iraq for being "Americanized." *Id.* at 203. One of Daoud's Iraqi-born friends, Tamir, testified that based on news reports he had seen and contact with relatives still in Iraq, "coming from the U.S., you're assumed to be loaded with money, so that's one reason [for kidnappings]; or . . . you may be a U.S. agent, and you get kidnapped." *Id.* at 213. Tamir also testified that Daoud's lengthy residence in the U.S. would become known almost immediately if he were to return and would be viewed suspiciously. *Id.* at 214.

In addition to oral testimony, Daoud submitted various documents, including: (1) dire travel warnings from the U.S. State Department, indicating that "[t]he risk of terrorism directed against U.S. citizens and interests in Iraq remains extremely high," *id.* at 356; *see also id.* at 363; (2) newspaper articles reporting that an Iraqi who had lived in Italy had been kidnapped as a suspected spy and killed while on business in Iraq, and that Iraqis working for the U.S. have been killed and kidnapped; and (3) guidelines promulgated by the European Council on Refugees and Exiles, stating that "US armored patrols [in Baghdad] are . . . ineffective" at handling the "security and human rights situation," *id.* at

369, and that "insurgents are targeting those working for or suspected of being associated with Coalition forces," *id.* at 370.

The IJ denied Daoud's application, stating that he had considered the State Department's 2003 country report on Iraq, which covered the human rights record of only the Hussein regime.[1]  The IJ reasoned that Daoud was not eligible for asylum because his application was untimely and there were no exceptional or changed circumstances to excuse the late filing.  As for restriction on removal, the IJ recognized as a basic issue whether Daoud's "Americanized" status qualified as a "particular social group" under 8 U.S.C. § 1231(b)(3)(A).  Admin. R. at 112.  He found Daoud's testimony "sufficiently detailed, consistent and believable," but stated that he "wants to know whether in fact this particular testimony that was presented today along with the [evidence] constitutes one of the sections under particular social status." *Id*. at 115-16.  But instead of resolving the issue, the IJ simply concluded that Daoud did not qualify for a restriction on removal because he would not "be in any danger if in fact he went back to Iraq." *Id*. at 117.  The IJ found that kidnappings are random and that

> the government in Iraq is really trying to start a democratic process
> for the people.  I think they're going in the right direction.  I think
> that the American military is there.  I think as long as they're there
> that things are hopefully going to get better; and that they are, in fact

---

[1]    The country report for the period immediately following the demise of the Hussein regime did not become available until February 2005.

-4-

trying to turn the tide at this particular time. At this particular date they're attacking Fallujah.

*Id.* at 116.

Daoud appealed to the BIA, submitting a copy of the U.S. State Department's 2004 country report on Iraq, which indicated that "insurgents targeted anyone whose death or disappearance would profit their cause and, particularly, anyone suspected of being connected to Coalition Forces." *Id.* at 40. The BIA adopted and affirmed the IJ's decision, and noted that it did "not find this newly offered evidence sufficient to warrant remanding this case to the [IJ]." *Id.* at 2. Daoud then petitioned this court for review, challenging only the decision regarding removal under § 1231 and the CAT.

## DISCUSSION

To obtain a restriction on removal, an alien must demonstrate that his "life or freedom would be threatened in [the proposed country of removal] because of [his] race, religion, nationality, membership in a particular social group,[2] or political opinion." 8 U.S.C. § 1231(b)(3)(A). An alien's life or freedom is presumed to be threatened if he "is determined to have suffered past persecution in the proposed country of removal." 8 C.F.R. § 208.16(b)(1)(i). Otherwise, the

---

2    A "particular social group" is a group of persons who share a common characteristic that "the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Niang v. Gonzales*, 422 F.3d 1187, 1199 (10th Cir. 2005).

alien must meet a clear probability standard—he must show that it is more likely than not that he would be persecuted if removed. *See INS v. Stevic*, 467 U.S. 407, 429-30 (1984); 8 C.F.R. § 208.16(b)(2). Similarly, the Convention Against Torture (CAT) restricts removal to a particular country if "it is more likely than not that the petitioner will be tortured if removed to that country." *Chaib v. Ashcroft*, 397 F.3d 1273, 1277 (10th Cir. 2005). The two types of restriction differ most profoundly in that 8 U.S.C. § 1231 "requires proof of persecution on account of a protected class, whereas [the] CAT is not concerned with the reasoning of the persecution, just whether the persecution arises to the level of torture." *Chaib*, 397 F.3d at 1277-78.

Where, as here, the BIA adopted and affirmed the IJ's decision in a brief opinion, repeating the IJ's conclusions or reasoning, we review the BIA's opinion by "consulting the IJ's more complete explanation of those same grounds." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). We do not weigh the evidence, nor do we evaluate the credibility of witnesses. *Yuk v. Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004). "[F]indings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We, therefore, defer to the factual findings of the BIA and the IJ if they are supported by substantial evidence. *Elzour v. Ashcroft*,

378 F.3d 1143, 1150 (10th Cir. 2004).  Legal conclusions are reviewed de novo.  *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005).

Daoud first challenges the IJ's conclusion that his status as an "Americanized" Iraqi was irrelevant to his safety in Iraq.  The IJ's only finding on the subject appears to be, "I think they just kidnap whoever they can and whoever is available."  Admin. R. at 115.  The IJ cited no evidence in support of his conclusion or the underlying finding.  The Attorney General attempts to support the IJ's conclusion by equating Daoud with "ordinary Iraqi[s]," Aplee. Br. at 30, and pointing to newspaper articles stating that insurgents have kidnapped and killed "foreigners," *id.* at 29.  We are not persuaded, however, that an Iraqi like Daoud who has lived his entire adult life—twenty-two years—in the United States would face the same risk of harm in Iraq as an ordinary Iraqi citizen, who has no ties to a coalition country.  Daoud offered evidence that he would be not be able to conceal his life in the U.S. and that his close friend, Elias, an Iraqi-born U.S. citizen, had been kidnapped and possibly killed after returning to Iraq.  Daoud also offered evidence that an Iraqi living in Italy had been kidnapped and killed while in Iraq.[3]  Moreover, there is unrefuted evidence in the record that U.S.

---

[3]     The Attorney General argues that Daoud is distinguishable from Elias because Elias may have been kidnapped because he "returned to Iraq to work on reconstruction."  Aplee. Br. at 29.  Regarding the murdered Iraqi-Italian, the Attorney General asserts that Daoud is not comparable because he is not Italian.

(continued...)

citizens and others working for or *suspected* of being associated with coalition forces are specifically targeted by insurgents or terrorists. Although Daoud has neither U.S. citizenship nor connections with coalition forces, nothing in the record contradicts Daoud's evidence that his return to Iraq after twenty-two years in the United States would raise suspicions. The IJ made no findings of fact to account for this evidence, and his finding of random kidnappings is unsupported by substantial evidence.

Daoud also challenges the IJ's finding that "things are hopefully going to get better" because "the American military is there." Admin. R. at 116. Daoud argues that this is impermissible conjecture and speculation. *See Elzour*, 378 F.3d at 1153 (stating that conjecture is not a substitute for substantial evidence). In support of the finding, the Attorney General cites a newspaper article reporting the opinions of then-Secretary of State Colin Powell and General John Abizaid that the insurgency will ultimately be defeated. But the article also reports Powell's opinion that "the insurgency in Iraq is getting worse and that the U.S. occupation there has increased anti-American sentiment." Admin. R. at 353. Further, there is evidence in the record suggesting that the military, at least in Baghdad, is not in control of the "security and human rights situation." *Id.* at

---

[3](...continued)
Neither of these points detracts from Daoud's position that he may be targeted for his lengthy ties to a coalition country.

369. In any event, the IJ's hope for a more stable situation in Iraq is no substitute for a factual finding derived from substantial evidence in the record.

Because the IJ failed to make factual findings that were supported by substantial evidence and necessary to determining whether Daoud established a clear probability of persecution or torture if removed to Iraq, we GRANT the petition for review, VACATE the BIA's decision affirming the IJ's order, and REMAND this matter for further proceedings consistent with this order and judgment.[4]

Entered for the Court

Wade Brorby
Circuit Judge

---

[4] As country reports are now available reflecting the conditions in Iraq following the demise of the Hussein regime, the IJ should consider present conditions in Iraq on remand. *See Solomon v. Gonzales*, No. 05-9522, 2006 WL 2037403, at *8, ___ F.3d ___, ___ (10th Cir. July 21, 2006). Consequently, we deny as moot Daoud's request for judicial notice of the country reports and the Attorney General's motion to strike Daoud's request.