**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 28, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MIHIRETAB TESHOME JOBIRA;
BEZA TESHOME JOBIRA,

Petitioners,

v.

ERIC H. HOLDER, JR., United
States Attorney General,

Respondent.

No. 10-9573
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

Mihiretab Teshome Jobira and Beza Teshome Jobira petition for review of final orders of removal. Exercising jurisdiction under 8 U.S.C. § 1252(a)(1), we deny the petition.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

The Jobiras are natives and citizens of Ethiopia. They claim to be brother and sister. In September 2006, the Jobiras entered the United States with visitor visas. On the date their visas expired, they applied for asylum, restriction on removal, and protection under the United Nations Convention Against Torture ("CAT"). According to their applications, the Jobiras were arrested on several occasions in 2005 as a result of their activities organizing fellow high school students in support of the Coalition for Unity and Democracy ("CUD").[1] They alleged that during their detentions, they were interrogated, held in squalid conditions, and severely beaten or tortured.

An asylum officer found the Jobiras' stories not credible and referred the matter for a hearing before an Immigration Judge ("IJ"). After hearing the Jobiras' testimony, the IJ issued an oral decision denying relief and granting voluntary departure. The IJ concluded the Jobiras' story had not proven credible for a number of reasons. There was a one-year discrepancy in the birth dates listed on Mihiretab's birth certificate (December 8, 1988) and visa (December 8, 1989). The latter date was just two months before Beza's birth date, casting doubt on their claim to be siblings. There was a discrepancy between the name of the high school Mihiretab claimed to have attended and the name listed on the

---

[1] The CUD is a political party opposed to the Ethiopian People's Revolutionary Democratic Front, the incumbent ruling party.

document he submitted purporting to show that he was suspended. The document bore the same name as Beza's school. There was a discrepancy between Beza's asylum application, which stated that her "family members back home have stopped their political expression," and her testimony that her other family members were never involved in politics. Neither Beza nor Mihiretab exhibited any scars or other marks that might be expected from the severe beatings they allegedly received during their detentions. Although Beza's birth certificate had a picture of her as a child, Mihiretab's birth certificate had a picture of him as a young adult, and his explanation that he changed the picture when applying for his passport on the advice of his hospital did "not make sense at all" to the IJ.

The IJ also made a number of findings about certain corroborating evidence. Although the Jobiras provided a letter from a Denver CUD group, they did not provide documentation from any Ethiopian CUD group stating that they were CUD "members or . . . sympathizers." The Jobiras did not provide testimony or an affidavit from their brother, with whom they were living at the time of the hearing and who could have vouched for their version of events. Nor did they offer corroborating letters from their parents or siblings who remained in Ethiopia despite the fact that they were in touch with those family members via telephone and email on a regular basis. The Jobiras failed to provide any corroborating evidence from former schoolmates who were involved in pro-CUD activity. They did not seek a report from an examining physician in the United

-3-

States, and the medical records they provided from Ethiopia were largely illegible. Finally, none of the documentary evidence they provided from Ethiopia was authenticated.

The Jobiras appealed the IJ's denial to the Board of Immigration Appeals ("BIA"). A single member of the BIA dismissed their appeal. This petition for review followed.

## II

"To qualify for asylum, an alien must show that he [or she] has suffered past persecution or has a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Sarr v. Gonzales, 474 F.3d 783, 788 (10th Cir. 2007) (quotation and alteration omitted). "To qualify for restriction on removal, an alien must demonstrate that his [or her] life or freedom would be threatened in the proposed country of removal because of his [or her] race, religion, membership in a particular social group, or political opinion." Id. (quotation and alteration omitted). Protection under the CAT requires a petitioner to show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Id. (quotation omitted).

A decision issued by a single BIA member under 8 C.F.R. § 1003.1(e)(5) is "an independent BIA decision that constitutes the final order of removal under 8 U.S.C. § 1252(a). Accordingly, in deference to the agency's own procedures,

we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." Uanreroro v. Gonzales, 443 F.3d 1197, 1204 (10th Cir. 2006) (citation omitted). "However, when seeking to understand the grounds provided by the BIA," we may "consult[] the IJ's more complete explanation of those same grounds." Id.

In conducting our review, "[w]e consider any legal questions de novo," Elzour v. Ashcroft, 378 F.3d 1143, 1150 (10th Cir. 2004), but "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B). Thus, we review "findings of fact under the substantial evidence standard," which requires us to determine whether the agency's factual findings are supported "by reasonable, substantial, and probative evidence considering the record as a whole." Elzour, 378 F.3d at 1150.

## III

In dismissing the Jobira's appeal, the BIA observed that the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (2005), amended the immigration laws "with regard to corroborative evidence." Under those amendments, an applicant must provide corroboration or a reasonable explanation for the unavailability of corroborating evidence "[w]here the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony." 8 U.S.C. § 1158(b)(1)(B)(ii); see also In re J-Y-C, 24 I. & N. Dec. 260, 263 (BIA

2007). After reciting two reasons provided by the IJ for finding the Jobiras'

testimony not credible, the BIA stated, "The [IJ] ultimately made an adverse

credibility determination but also concluded that the respondents had otherwise

failed to corroborate their claim where corroboration was available as required

under the REAL ID Act." The BIA then discussed several pieces of missing

documentary evidence—evidence from the Jobiras' brother living in Denver, or

"from any other family members in Ethiopia or from the CUD in Ethiopia

attesting to their political activities and/or membership"—and concluded that the

Jobiras had "not shown that the information requested by the [IJ] was not

reasonably available to them as required under the Act." It concluded that

"[u]nder these circumstances, we find that the [IJ's] decision determining that the

respondents failed to meet their burden of proof for relief and protection is

sufficiently supported by the record."

We read the BIA's decision as being grounded only in its approval of the

IJ's determination regarding the lack of certain corroborative evidence. Our

review is thus limited to the BIA's corroboration determination. We may

"consult[] the IJ's more complete explanation" of the corroboration issue because

the BIA's "reasoning is difficult to discern and the IJ's analysis is all that can

give substance to the BIA's reasoning." Uanreroro, 443 F.3d at 1204; see also

<u>Sarr</u>, 474 F.3d at 790.[2]  In so doing, we note that our review of the corroboration finding is circumscribed by statute:  "No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable."  8 U.S.C. § 1252(b)(4).

The IJ considered it significant that the Jobiras had not supplied any corroborating evidence from their family members, particularly their brother living in Denver.  Their only explanation for this failure was that it did not occur to them to have their brother testify.  The Jobiras provided no explanation for failing to present corroboration from their family members in Ethiopia, with whom they stated they were in weekly contact.

In addition, the IJ faulted the Jobiras for failing to provide any evidence from an Ethiopian source supporting their claim to be "members or . . . sympathizers" of the CUD.  Although the Jobiras point to Mihiretab's explanation that they were too young to be CUD <u>members,</u> they overlook the IJ's reference to evidence that they were CUD <u>sympathizers</u>.  The BIA noted this distinction by referring to evidence of the Jobiras' "political activities and/or membership."

The Jobiras also argue that their testimony, along with the documentary

---

[2]     Although the BIA's discussion is limited and its conclusions summary, we reject the Jobiras' argument that the "substantive comments" in the BIA's decision are legally insufficient.

evidence they did provide, was sufficient to sustain their burden of proof. But the IJ explained his concerns about the Jobiras' testimony and the documentary evidence on record. And the BIA held the IJ's conclusion that the Jobiras failed to satisfy their burden in the absence of certain corroborating evidence was supported by the record. We cannot say that "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Our conclusion is unaltered by Solomon v. Gonzales, 454 F.3d 1160 (10th Cir. 2006). In that case, the BIA faulted an applicant for failing to present live testimony from her half-sister even though the half-sister had submitted an affidavit. We explained that when an applicant submits "relevant evidence in compliance with the agency's rules, the IJ may not treat the absence of additional formalities as a basis for an adverse credibility determination without affording the applicant a reasonable opportunity to comply with the IJ's demands." Id. at 1168. Unlike the applicant in Solomon, the Jobiras did not provide an affidavit from their brother living in Denver or from any other family member. This case does not implicate the absence of formalities, but the absence of corroborating evidence from family members.

Finally, the Jobiras argue the IJ should have afforded them an opportunity to obtain and provide the missing corroborative documentation. But the Jobiras did not present this argument to the BIA. Accordingly, the Jobiras failed to exhaust this issue, and we will not consider it. See Sidabutar v. Gonzales,

503 F.3d 1116, 1118 (10th Cir. 2007) ("[W]e generally assert jurisdiction only over those arguments that a petitioner properly presents to the BIA."). Although it is true that we have not "required exhaustion of constitutional challenges to the immigration laws," Vicente-Elias v. Mukasey, 532 F.3d 1086, 1094 (10th Cir. 2008) (quotation omitted), the Jobiras do not fit within this exception. "[O]bjections to procedural errors or defects that the BIA could have remedied must be exhausted even if the alien later attempts to frame them in terms of constitutional due process on judicial review." Id. The BIA had the authority to consider and correct the IJ's alleged due process error, but was not called upon to do so.

## IV

Having failed to meet the persecution standards for asylum, the Jobiras necessarily failed to satisfy the higher standards required for restriction on removal under the immigration laws or relief under the CAT. See Solomon, 454 F.3d at 1163. Accordingly, the petition for review is denied.

Entered for the Court

Carlos F. Lucero
Circuit Judge