**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 16, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

AMARJIT SINGH,

      Petitioner,

v.

LORETTA E. LYNCH, United States
Attorney General,

      Respondent.

No. 15-9541
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **LUCERO**, and **McHUGH**, Circuit Judges.
_____

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

Amarjit Singh, a member of the Sikh ethnic group and a citizen of India,

claims he will be persecuted on account of his affiliation with a Sikh political party if

he returns to India. The immigration judge (IJ) denied his asylum application, his

request for withholding of removal, and his request for relief under the Convention

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Against Torture. The Board of Immigration Appeals (BIA) affirmed the ruling of the IJ, thereby dismissing Mr. Singh's appeal. Mr. Singh has now petitioned this court for review of the BIA's decision. Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny his petition.

## I. BACKGROUND

Mr. Singh entered the United States on September 5, 2014, at San Ysidro, California, without a valid entry document. A month later, Mr. Singh was served with a Notice to Appear, which charged him as removable under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA). 8 U.S.C. § 1182(a)(7)(A)(i)(I). Mr. Singh, who was represented by counsel throughout his removal proceedings, conceded he was removable but reserved the right to seek asylum and relief under the Convention Against Torture.

Mr. Singh then filed an application for asylum on the basis of religion, political opinion, and membership in a particular social group. In the background portion of his application, Mr. Singh indicated he had been employed on a family farm in India from 1994 through 2014. The background section of the application also included a space to indicate religious affiliation, which Mr. Singh left blank.[1] As to the substance of his application, Mr. Singh declared that on various occasions, members of the Indian Congress political party threatened and attacked him while he was working for the Shiromani Akali Dal Amritsar (SAD), an Indian political party

---

[1] Mr. Singh did, however, indicate in his application for asylum that he is a member of the Sikh ethnic group.

2

that represents the rights and interests of Sikhs. Mr. Singh's application did not provide any detail about the capacity in which he participated in the SAD party.

Mr. Singh did assert that on one occasion a member of the Congress party threatened him with death if he did not convert to Hinduism or join the Congress party. As a result, Mr. Singh alleged he was in fear of harm or mistreatment if he were to return to India. He further indicated that the Hindu members of the Congress party would attempt to kill him if he returned and that he lacked confidence in the local police force's ability to protect him.

At a hearing before the IJ, Mr. Singh testified, through an interpreter, in support of his application for asylum. In contrast with the statement in his application that he had been a farmer in India continuously from 1994 through 2014, Mr. Singh testified he had worked as a laborer in Dubai from 2002 until 2005 or 2006. When the IJ asked why he did not include this information on his application, Mr. Singh stated he had not been asked that question and "didn't think of it." The Government also inquired about Mr. Singh's affiliation with the SAD party. In response, Mr. Singh clarified that he was not a member of the SAD party and had not participated in any political activities. Rather, he had simply worked for the party by installing tents at public events. Mr. Singh further testified that he had never voted in a national election in India.

With respect to his allegations of persecution, Mr. Singh explained that he had been beaten on one occasion by and received death threats from members of the Congress party. But Mr. Singh also acknowledged that no SAD worker or member

3

had ever been killed by a member of the Congress party, and that on at least one occasion, local law enforcement had intervened to settle a dispute between members of the Congress and SAD parties.

Mr. Singh was also questioned about his religious affiliation. Specifically, the Government asked why Mr. Singh had short hair and was clean shaven, contrary to the tenants of Sikhism. Mr. Singh provided inconsistent responses, stating first that he had cut his hair and shaved while in India due to threats from the Congress party. But when asked why he had not regrown his hair upon leaving India, he testified that he cut his hair and beard when he arrived in the United States because he did not have the proper products to maintain them. Mr. Singh also testified that he had never tried to relocate to the state of Punjab, India, which has a majority Sikh population. He further acknowledged that the former prime minister of India was a Sikh who belonged to the Congress party and that the Congress party includes other members who are Sikh.

After the hearing, the IJ issued an oral decision and order denying Mr. Singh's application for asylum. The IJ found that Mr. Singh was not a credible witness due to the various inconsistencies between his application for asylum and his testimony. The IJ further concluded that even if Mr. Singh had provided credible testimony as to persecution, he failed to establish that relocation to another part of India was not an option or that a public official had acquiesced to persecution or torture by the Congress party members. The IJ thus concluded Mr. Singh had failed to carry his

4

burden under both the INA and the Convention Against Torture. Accordingly, the IJ denied Mr. Singh's application for asylum and ordered his removal to India.

Mr. Singh appealed the IJ's decision to the BIA and submitted additional evidence in the form of a letter from Mr. Singh's doctor in India and a letter from a regional leader of the SAD party. The BIA dismissed Mr. Singh's appeal, ruling the IJ's adverse credibility findings were not clearly erroneous. Specifically, the BIA relied on the inconsistent evidence Mr. Singh provided regarding his membership and participation in the SAD party, his time spent living and working in Dubai, and his professed adherence to the Sikh religion. The BIA also declined to remand the case to consider Mr. Singh's new evidence, concluding that Mr. Singh failed to demonstrate that the evidence was not previously available, as required by 8 C.F.R. § 1003.2(c). Finally, the BIA concluded that because Mr. Singh failed to establish eligibility for asylum, he likewise failed to establish eligibility for withholding of removal or protection under the Convention Against Torture. Mr. Singh timely petitioned this court for review of the BIA's order.

## II. DISCUSSION

On appeal, Mr. Singh contends the BIA's adverse credibility findings were not supported by substantial evidence and that the BIA accordingly erred in denying his application for asylum, his request for withholding of removal, and his claim under the Convention Against Torture. He also argues the BIA erred in declining to remand to the IJ in light of his newly presented evidence.

5

Where, as here, a single member of the BIA issues a brief order affirming the IJ's decision, we review the BIA's order as the final agency determination and limit our review to the grounds specifically relied upon by the BIA. *Uanreroro v. Gonzales*, 443 F.3d 1197, 1203–04 (10th Cir. 2006). "However, when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id.* at 1204. We review the BIA's legal conclusions de novo and its factual determinations, including credibility determinations, for substantial evidence. *Id.*; *Razkane v. Holder*, 562 F.3d 1283, 1287 (10th Cir. 2009). "[T]he BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Rivera-Barrientos v. Holder,* 666 F.3d 641, 645 (10th Cir. 2012) (internal quotation marks omitted).

### A. *Adverse Credibility Finding and Application for Asylum*

Turning first to Mr. Singh's application for asylum, under the INA, Mr. Singh bore the burden of proving eligibility for asylum. 8 U.S.C. § 1158(b)(1)(B)(i). An asylum applicant's testimony alone may satisfy this burden, but only if the testimony "is credible, is persuasive, and refers to specific facts sufficient to demonstrate that applicant is [entitled to relief]." *Id.* § 1158(b)(1)(B)(ii). In determining whether the applicant's testimony is credible, the IJ or BIA should consider "the totality of the circumstances, and all relevant factors" and

> may base a credibility determination on the demeanor, candor, or
> responsiveness of the applicant or witness, the inherent plausibility of
> the applicant's or witness's account, the consistency between the

6

applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements . . . .

*Id.* § 1158(b)(1)(B)(iii). Such "inconsistencies, inaccuracies, or falsehoods" in the applicant's statements can form the basis of an adverse credibility ruling regardless of whether they "go[] to the heart of the applicant's claim, or any other relevant factor." *Id.* Moreover, in the asylum context, "[t]here is no presumption of credibility." *Id.*

When reviewing a BIA adverse credibility determination, although we do not "blindly accept . . . that an alien seeking asylum or restriction on removal is not credible," we will defer to the BIA's ruling so long as it provides "specific, cogent reasons for disbelieving the witness'[s] testimony." *Elzour v. Ashcroft*, 378 F.3d 1143, 1152 (10th Cir. 2004) (internal quotation marks omitted). Such reasoning "may appropriately be based upon such factors as inconsistencies in the witness'[s] testimony, lack of sufficient detail, or implausibility." *Id.*

Here, the BIA affirmed the IJ's denial of Mr. Singh's application for asylum on the basis that he lacked credibility. In so ruling, the BIA relied on various inconsistencies between Mr. Singh's application for asylum and his oral testimony, including inconsistencies regarding his work history, his level of involvement in the SAD party, and his devotion to the Sikh religion. Mr. Singh argues the BIA erred in relying on these inconsistencies, asserting he was not provided an opportunity during his asylum hearing to explain them. We disagree. The record reflects that when Mr.

7

Singh's testimony conflicted with his application for asylum, either the IJ or the Government asked Mr. Singh to explain the discrepancies. The IJ's adverse credibility ruling was therefore not due to an absence of explanation, but instead reflects the IJ's dissatisfaction with the explanations Mr. Singh provided. *See Diallo v. Gonzales*, 447 F.3d 1274, 1283 (10th Cir. 2006) (affirming an adverse credibility determination where the applicant for asylum "was given the opportunity to explain the inconsistencies but failed to do so to the IJ's satisfaction"). Because the IJ gave specific, cogent reasons for finding Mr. Singh incredible and the BIA reasonably relied on those findings, we see no reason to disrupt the BIA's adverse credibility ruling. And because an adverse credibility ruling is a sufficient basis to deny asylum, we affirm the BIA's denial of Mr. Singh's application for asylum.

### B. *Withholding of Removal*

Mr. Singh also argues the BIA erred in denying his request for withholding of removal. Under the INA, the Attorney General may prohibit removal if she determines "the alien's life or freedom would be threatened" in the country to which he would be removed "because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). "The burden of proof for withholding of removal is higher than for asylum." *Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015). Under this burden, the applicant must prove a "clear probability of persecution on account of a protected ground." *Id.* at 987 (internal quotation marks omitted). "Failure to meet the burden of proof for an asylum claim necessarily forecloses meeting the burden for a withholding claim." *Id.* Thus, having

8

failed to establish eligibility for asylum, Mr. Singh has also necessarily failed to satisfy his burden of proof for withholding of removal, and we affirm the BIA's denial of his request for withholding of removal.

### C. Convention Against Torture

Mr. Singh has likewise failed to prove he is entitled to relief under the Convention Against Torture. Under the Convention Against Torture, Mr. Singh had the burden of proving "that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). The Convention defines torture as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity" for the purpose of obtaining information or a confession, punishing, intimidating, coercing, or "for any reason based on discrimination of any kind." *Id.* § 1208.18(a)(1).

In this case, Mr. Singh's claim under the Convention Against Torture fails not only due to the adverse credibility ruling, but also because his own testimony revealed that local law enforcement had attempted to mediate the dispute between members of the Congress and SAD parties. Thus, Mr. Singh did not prove that the alleged attacks by the members of the Congress Party were at the instigation of or with the consent or acquiescence of a public official, as required under the Convention Against Torture.

9

### *D. Motion to Remand*

Finally, Mr. Singh argues the BIA erred in declining to remand his case to the IJ so that it could consider the new evidence he submitted to the BIA. "We review the BIA's denial of a motion to reopen for abuse of discretion." *Huerta v. Gonzales*, 443 F.3d 753, 757 (10th Cir. 2006). The BIA "properly has procedural rules governing the introduction of evidence." *Solomon v. Gonzales,* 454 F.3d 1160, 1164 (10th Cir. 2006), *superseded by statute on other grounds as recognized in Mahomed v. Holder*, 506 F. App'x 688, 693 (10th Cir. 2012). Under these rules, the BIA will only reopen a removal proceeding on the basis of new evidence if the evidence is "material and was not available and could not have been discovered or presented at the former hearing," 8 C.F.R. § 1003.2(c)(1). The BIA in this case concluded Mr. Singh failed to show he could not have discovered or presented the new evidence at the IJ hearing. The BIA noted Mr. Singh's case had been ongoing for over six months and that Mr. Singh's brother in India had sent other documents to Mr. Singh in time to be presented to the IJ while the case was pending. The BIA also concluded that even if properly submitted, Mr. Singh's new evidence was insufficient to rehabilitate his lack of credibility. Because Mr. Singh has presented no argument undermining this conclusion, we affirm the BIA's denial of his request to reopen the removal proceedings.[2]

---

[2] Mr. Singh also contends the IJ erred in failing to grant a continuance when he informed the court that the new evidence was forthcoming. But Mr. Singh points to nothing in the record indicating he requested a continuance. Instead, the transcript of his asylum hearing reflects that although Mr. Singh informed the IJ that his brother in India was sending new evidence, Mr. Singh never asked the IJ for a continuance.

### III.    CONCLUSION

For these reasons, we **DENY** Mr. Singh's petition for review of the BIA order.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

11