UNITED STATES of America,

v.

Gerald WALLACE, Appellant.
No. 12900.

United States Court of Appeals
Third Circuit.

Argued July 13, 1959.

Decided Aug. 5, 1959.

H. David Rothman, Pittsburgh, Pa., for appellant.

Daniel J. Snyder, Asst. U. S. Atty., Pittsburgh, Pa. (Hubert I. Teitelbaum, U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN and KALODNER, Circuit Judges, and FORMAN, District Judge.

McLAU'GHLIN, Circuit Judge.

Appellant was convicted of fraudulently and knowingly selling and facilitating the concealment and sale of heroin. He was given the mandatory five year sentence as a first offender.

He argues that he was entrapped as a matter of law. The evidence on behalf of the government was that a narcotic agent, Hill, and a special government employee, Patton, went to appellant's home. All three had attended school together and knew one another. The special employee first saw and talked to Wallace alone. He told him that Hill wanted to buy some heroin. Wallace said he remembered Hill but there is nothing in the record from which to infer any friendly feeling by Wallace for Hill. The former was asked on direct examination, "You knew Mr. Hill as an old schoolmate," and he answered, "Yes, that's all." Patton went back and brought Hill to Wallace. According to Patton, Hill told Wallace "he wanted to buy two spoons, like he (Patton) said. And he (Wallace) said, well, he will have to go out and get it. * * * And he (Hill) said he had thirty-five dollars that he wanted to spend. So he (Wallace) said he would have to have the money in advance. And he (Wallace) proceeded to put his clothes on, and he took the money and left. And he told us to wait there for him. And we waited until about three o'clock, and he came back and gave it to the defendant Washington. She went upstairs—he told her to fix up two spoons for Charlie —(Hill)." On cross-examination Patton was asked and replied as follows: "Q. Did you say he was sick and needed it badly? A. I don't recall telling him that. Q. Is it possible that you said that? A. I could have."

Agent Hill testified that Patton brought him to Wallace; that the first thing the latter said to him was, "Charlie, I didn't know that you were using narcotics." Hill answered that he " * * * was using narcotics at the time. * * * I then told him that I had thirty-five dollars and I wanted to buy two spoons. * * * The defendant Wallace told me to give him the thirty-five dollars and he would have to leave his home to get it." Hill gave Wallace the thirty-five dollars. He said that

Wallace told him and Patton " * * * to wait for him in his home and he would go to get the heroin and return shortly. * * * When the defendant Wallace returned, he came into the house, he stopped to talk to the defendant Washington in my presence. He told the defendant Washington that he had a quarter-ounce of heroin. He then gave this package to the defendant Washington and told her to go upstairs and 'make up two spoons for Charlie'—that was myself. The defendant Washington then went upstairs. About a minute later, the defendant Wallace followed the defendant Washington upstairs, and in about another two minutes the defendant Wallace returned back downstairs, with the special employee and myself, into the bedroom, which was the next room from the living room. He then handed me two small brown paper packages and told us to leave by the rear door."

Wallace testified that Patton told him " * * * that a friend of his—a friend of his had a girl friend that was sick, and he wanted to know if I knowed where to get any drugs at." He answered yes to his attorney's questions "You went to purchase the narcotics for Mr. Hill? * * *" and that the reason he did so was " * * * because Mr. Hill told you (Wallace) he had a sick girl friend?"

The trial judge presented the question of entrapment to the jury carefully and fairly. Among other things he said:

"It is important in considering the defense of entrapment to ascertain whether the acts charged as constituting the offense were the result of the intent of some other person to place the accused in a position where he might be charged with the offense, in which event the defendant may not be convicted, or whether the defendant, acting in pursuance of his own intent, committed the acts, such other person merely affording him the opportunity of doing so, in which latter event the defense of entrapment would not relieve the defendant from responsibility.

"It seems not to be disputed that a public officer solicited this particular violation. But even so, there could be no entrapment if the defendant was already disposed to such wrongdoing, awaiting only an advantageous and apparently safe opportunity. Such disposition or its absence may be evidenced in various ways, including response to the particular request.

"The question is whether the defendant was disposed to trade in narcotics or yielded to importunations contrary to his own inclination."

This, we think, soundly summed up the phase of entrapment with which we are particularly concerned in this appeal. There was no objection to the quoted language or to any other part of the charge on behalf of the defendant. Nor was there any request for instructions to the jury contrary to or in addition to those given. The part of the charge set out above directly follows the leading case on the point in this circuit. United States v. Sawyer, 1954, 210 F.2d 169, 170. There the court through Judge Hastie held that:

"In the present case it seems not to be disputed that a public officer solicited the particular violation. But even so, there could be no entrapment if the defendant was already disposed to such wrongdoing, awaiting only an advantageous and apparently safe opportunity. Such disposition or its absence may be evidenced in various ways, including response to the particular request and, in some situations, by a revealing recent course of conduct or activity. We think the evidence in this case raised a sufficient question whether defendant was disposed to trade in narcotics or yielded to importunations contrary to his own inclination, so that the issue of entrapment should have been submitted to the jury with an appropriate explanation of the legal prerequisites of that defense."

There was evidence in the case at bar of the appellant's ready response to Hill's request for the narcotic. There is nothing in the testimony on behalf of the government to indicate that Wallace was lured into the commission of a criminal act. See Sorrells v. United States, 1932, 287 U.S. 435, 445, 53 S.Ct. 210, 77 L.Ed. 413. Patton on direct examination ostensibly told the full story of his dealing with Wallace as above detailed. On cross-examination, asked if he told Wallace that Hill was sick and needed the heroin badly, he replied, "I don't recall telling him that." Then queried, "Is it possible that you said that?" Patton said, "I could have." It might be noted that even Wallace did not assert Patton told him Hill was sick and needed the drug. What he did claim was that Patton stated to him that a friend of his (Hill) had a girl friend who was sick.

■ Admittedly there was a sharp conflict between the theory of the government and that of the defense. The government testimony if believed established a "ready complaisance" in fulfilling the agent's request. See Sherman v. United States, 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848. Lending important support to the government's theory was Wallace's own story that he was taking heroin at the time and that when he obtained (from a person named Wardlow) the heroin which he later gave Hill, Wardlow gave him some heroin for himself. If the defense had been accepted by the jury, Wallace's motivation would have been resolved as sympathetic friendship. Whatever way it was decided the problem was for the jury. Some question is raised of our statement in United States v. Klosterman, 3 Cir., 1957, 248 F.2d 191, 196 where we say, "We do not think that the degree of persuasion is significant where the first approach is made by the agent of the law to an apparently innocent man." In that opinion we were governed by the Sorrells case, supra and stated at page 194 that the Sawyer decision, supra, though prior to Sorrells, was consistent therewith. Klosterman dealt with a bribery indictment which we there sharply distinguished from the ordinary sale of narcotics or contraband liquor cases. Aside from everything else the Klosterman comment has no application here because on the evidence the jury believed, that body could have reasonably found and, from its verdict, did find that there was no persuasion present. The trial judge had stressed that element of the issue strongly in his charge when he said:

"In addition, on the issue of entrapment, if you find a sale here, and that it was made or induced by an appeal to sympathy and friendship, that the sale was made because the Government agent induced the defendant to make the sale because of a past grade school acquaintanceship, sympathy and friendship, such a basis of exhortation of the defendant to make a sale cannot be tolerated. And if you find that this is why the defendant made the sale, you should find that he was entrapped and find him not guilty."

■ The remaining question argued by appellant is that the exemption from consideration under the Federal Youth Corrections Act, 18 U.S.C. § 5005 et seq. of offenses for which there is a mandatory penalty is an unreasonable and arbitrary classification and deprives appellant of due process.

The Act of August 25, 1958, § 4, 72 Stat. 846, 18 U.S.C. § 4209 amending the Federal Youth Corrections Act, 18 U.S.C. c. 402 reads:

"In the case of a defendant who has attained his twenty-second birthday but has not attained his twenty-sixth birthday at the time of conviction, if, after taking into consideration the previous record of the defendant as to delinquency or criminal experience, his social background, capabilities, mental and physical health, and such other facts as may be considered pertinent, the court finds that there is reasonable grounds to believe that the defendant will benefit from the treatment

provided under the Federal Youth Corrections Act (18 U.S.C. Chap. 402) sentence may be imposed pursuant to the provisions of such Act."

By Section 7 of that same amending act it was provided that it did "not apply to any offense for which there is provided a mandatory penalty."

Wallace at the time of sentence was within the age bracket of the above 1958 amendment but the offense for which he was convicted called for a mandatory penalty. That type of crime was expressly eliminated from the application of the amendment. At the time of sentencing, through inadvertence the exclusion of offenses carrying mandatory sentences from the 1958 amendment was not called to the attention of the trial judge who imposed sentence under the Youth Corrections Act. The following day, in the light of section 7 of the amending act, Wallace was resentenced and given the mandatory minimum penalty attached to the crime of which he had been convicted.

The sincere ad hominem argument on behalf of appellant for resentencing under the Youth Corrections Act calls attention to appellant's need for rehabilitation. It is our understanding that if the situation should warrant it, treatment can be had under the present sentence. In any event there has been no discrimination made as between Wallace and other persons of the same class committing like offenses. And it is settled law that the fixing of penalties for crimes is a legislative function. A sentence within the limits prescribed by law for an offense will not ordinarily be regarded as cruel or unusual or excessive punishment. Martin v. United States, 10 Cir., 1938, 100 F.2d 490, 497. See also Commonwealth of Pennsylvania ex rel. Sullivan v. Ashe, 1937, 302 U.S. 51, 58 S.Ct. 59, 82 L.Ed. 43. The mandatory sentence in this instance is the result of Congressional action striving to contain (and with a hoped for reduction in) the dread crime of selling narcotics. The penalty called for by the statute was

within the power of the Congress to establish. It is not for the courts to disturb.

The judgment of the district court will be affirmed.