**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**April 14, 2008**

**FOR THE TENTH CIRCUIT**

**Elisabeth A. Shumaker**
**Clerk of Court**

ARAMAYIS HOVHANNISYAN,

Petitioner,

v.

MICHAEL B. MUKASEY,* United
States Attorney General,

Respondent.

No. 07-9541
(Petition for Review)

---

**ORDER AND JUDGMENT***

---

Before **BRISCOE**, **BALDOCK**, and **LUCERO**, Circuit Judges.

---

Petitioner Aramayis Hovhannisyan, a native and citizen of Armenia, seeks

review of the Board of Immigration Appeal's (BIA) decision affirming an

---

* On November 9, 2007, Michael B. Mukasey became the United States
Attorney General. In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Mukasey is substituted for Alberto R. Gonzales as the
respondent in this action.

** After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Immigration Judge's (IJ) order denying his application for asylum.[1]  He

challenges the IJ's determination that his testimony was not credible.  We

conclude that the BIA's credibility determination was adequately supported.

Accordingly, we deny the petition for review and vacate the temporary stay

previously issued by this court.

*Background*

Hovhannisyan was admitted to the United States in June 2003, at the age of

twenty-one, on a J-1 non-immigrant visa valid until September 2003 for an

employment program.  He filed a request for asylum in May 2004.  In June 2005,

the Department of Homeland Security initiated removal proceedings.

Hovhannisyan conceded removability, but sought asylum, withholding of

removal, and protection under the Convention Against Torture due to past

persecution and fear or future persecution based on his Jewish heritage and the

political activities of his father and himself.

At the immigration hearing, Hovhannisyan described several attacks on him

and his parents between April 2002 and January 2003, which he asserted were

---

[1]     The agency also denied Hovhannisyan's applications for restriction on
removal and relief under the Convention Against Torture, but Mr. Hovhannisyan
did not appeal those rulings to this court.  "Issues not raised on appeal are deemed
to be waived." *Krastev v. INS*, 292 F.3d 1268, 1280 (10th Cir. 2002).  Even so,
his failure to meet the asylum standards necessarily means he cannot meet "the
higher burden of proof required for withholding of removal . . . or [the]
Convention Against Torture." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1202
(10th Cir. 2006).

motivated by anti-Semitism. Although he stated that his mother is Jewish, he testified that he did not consider himself to be Jewish, he never discussed his Jewish ancestry with his parents, the family did not associate with Jews, and they did not attend a synagogue or celebrate Jewish holidays. He also testified that he and his parents were beaten, insulted, and detained because his father was a member of the Armenian Democratic Party, and because both he and his father had spoken at political demonstrations in opposition to the government.

Hovhannisyan described a demonstration in April 2002 at which his father spoke about the lawlessness in Armenia. A few days later, the family began receiving threatening telephone calls. When he and his parents complained about the calls to the Central Department of Human Rights, they were told that because they were Jewish, they should go to Israel and preach their religion there.

Hovhannisyan testified that he and his parents were arrested in May 2002, and their home was ransacked. Hovhannisyan was questioned, insulted, and beaten for two days. Three months later, Hovhannisyan and his father spoke at a demonstration about their arrest and treatment. Hovhannisyan testified he was arrested in September 2002 and detained for four days, and beaten, insulted, and spat upon.

Hovhannisyan stated that a month later he was beaten by people in police uniforms. His nose was broken during the beating and his attackers said that the dirty Jew deserved to be beaten badly. He further stated that his parents took him

to a hospital for a broken nose in January 2003. On the way, their vehicle was shot at by someone in another vehicle, and they received another threatening phone call. Fearing for their lives, the family moved to the city of Echmiadzin to hide. Hovhannisyan testified that he last spoke with his family in August 2003, and he does not know if they are still alive.

The IJ denied Hovhannisyan's application, finding implausible his claims that he was persecuted based on his Jewish ethnicity. There was no evidence that the people in Armenia would know that Hovhannisyan is Jewish unless he disclosed that fact, and it was "irrational that he would have presented himself to anyone as being Jewish." Admin. R. at 51. Based on the IJ's finding that Hovhannisyan's testimony was not credible, he determined that Hovhannisyan failed to meet his burden of proof for asylum. Contributing to the incredibility finding was the lack of any documentation to corroborate Hovhannisyan's assertions that he is of Jewish ancestry, that his father was a member of the Armenian Democratic Party, or that he was treated at a hospital for his broken nose. The BIA issued a single-member opinion dismissing the appeal.

After the BIA issued its decision, Hovhannisyan sought leave to file his Armenian birth certificate showing that his mother is Jewish. The BIA treated this request as a motion to reopen and denied it because Hovhannisyan did not explain why he could not have obtained the birth certificate before the IJ hearing.

-4-

*Discussion*

## A.  Standards of Review

A single BIA member decided Hovhannisyan's appeal and issued a brief opinion; therefore, "we review the BIA's decision as the final agency determination and limit our review to issues specifically addressed therein." *Diallo v. Gonzales*, 447 F.3d 1274, 1279 (10th Cir. 2006).  Although "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance . . . , we are not precluded from consulting the IJ's more complete explanation of those same grounds."  *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).  We review the BIA's factual findings for substantial evidence, rejecting them only if "the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary."  *Sarr v. Gonzales*, 474 F.3d 783, 788-89 (10th Cir. 2007) (quotation omitted).  We review de novo the BIA's legal conclusions.  *Diallo*, 447 F.3d at 1279.

## B.  Asylum

To be eligible for asylum, the applicant has the burden of establishing that he is a refugee by showing that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant."  8 U.S.C. § 1158(b)(1)(B)(i).  If he does so, the Secretary of Homeland Security or the Attorney General then exercises

discretionary judgment in either granting or denying asylum. *Id.* § 1158(b)(1)(A); *see also Woldemeskel v. INS*, 257 F.3d 1185, 1189 (10th Cir. 2001).

## C. Credibility

Hovhannisyan challenges the IJ's adverse credibility finding, asserting that it is not supported by substantial evidence. He also contends that the IJ and the BIA erred in requiring corroborating documentary evidence of his Jewish ancestry, his hospital treatment, and his father's political affiliation.

"[A]n asylum applicant's otherwise credible testimony constitutes sufficient evidence to support an application." *Solomon v. Gonzales*, 454 F.3d 1160, 1165 (10th Cir. 2006). "[A]n IJ generally must give specific, cogent reasons for an adverse credibility finding." *Wiransane v. Ashcroft*, 366 F.3d 889, 897 (10th Cir. 2004) (quotation omitted). This court will not evaluate witness credibility or weigh the evidence. *Woldemeskel*, 257 F.3d at 1189.

Based upon Hovhannisyan's own testimony, the IJ concluded that the people in Armenia would not know Hovhannisyan is Jewish, so "it's irrational for [him] to fear any harm in this regard." Admin. R. at 51. Hovhannisyan testified that he did not think of himself as Jewish or practice Judaism, and as the IJ observed, "[i]t seems irrational that he would have presented himself to anyone as being Jewish," *id.* An implausible story can support an adverse credibility determination. *Chaib v. Ashcroft*, 397 F.3d 1273, 1278 (10th Cir. 2005). The IJ's

-6-

conclusion that the story was implausible is supported by substantial evidence, as is his determination that Hovhannisyan was not credible.

This credibility finding also applies to Hovhannisyan's political-persecution claim. A witness who is found not to be credible on one claim may be treated as not credible on others. *See Hattem v. United States*, 283 F.2d 339, 343 (9th Cir. 1960) (stating witness' false testimony on one material fact authorizes trier of fact to disregard all of witness' testimony); *cf. Allen v. Chicago Transit Auth.*, 317 F.3d 696, 703 (7th Cir. 2003) (holding trier of fact is to weigh a witness' perjury). Therefore, the IJ's finding that Hovhannisyan was not credible on his religious-persecution claim provided adequate support to reject his political-opinion claim, particularly since the IJ found that the religious-persecution claim was central to the case. *See* Admin. R. at 51 ("The respondent's nationality and the insults and mistreatment because of being Jewish are central to his claim.").

Hovhannisyan also contends that the IJ's credibility determination was based solely on his failure to produce certain corroborating documents. He relies on *Solomon*, which held that "in most cases lack of documentary corroboration does not, in itself, constitute substantial evidence to support an adverse credibility determination." 454 F.3d at 1164. But as discussed above, the IJ's credibility finding was based on legitimate factors other than a lack of corroborating documentary evidence. Accordingly, Hovhannisyan is not entitled to relief.

*Motion to Reopen to Receive Birth Certificate*

Hovhannisyan requested the BIA to reopen his case to supplement the record with his birth certificate showing that his mother is Jewish. According to Hovhannisyan, he asked a former neighbor in Albania to break in to his family's vacant house and retrieve his birth certificate. The BIA rejected this request because Hovhannisyan did not explain why he could not have obtained the document prior to the IJ hearing.

"A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing. . . ." 8 C.F.R. § 1003.2(c)(1). The decision not to reopen is reviewed for an abuse of discretion. *Kechkar v. Gonzales*, 500 F.3d 1080, 1084 (10th Cir. 2007). "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Id.* (quotation omitted). Based on our review of the record, we find no abuse of discretion in the BIA's ruling.

*Conclusion*

We DENY the petition for review and VACATE the temporary stay previously entered by this court.

Entered for the Court


Mary Beck Briscoe
Circuit Judge