## CVITKOVIC et al. v. UNITED STATES.
### No. 6041.

Circuit Court of Appeals, Ninth Circuit.
June 9, 1930.

Rehearing Denied July 14, 1930.

John F. Dore and Fred C. Brown, both of Seattle, Wash., for appellants.

Anthony Savage, U. S. Atty., and Cameron Sherwood and Hamlet P. Dodd, Asst. U. S. Attys., all of Seattle, Wash.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge.

The indictment in this case contains three counts, naming six defendants. The first count charges that the several defendants unlawfully conspired to manufacture and possess intoxicating liquor and to maintain a common nuisance in violation of the National Prohibition Act (27 USCA) and the commission of numerous overt acts to effect the object of the conspiracy; the second count charges that the defendants carried on the business of distiller of spirits without having given bond as required by law; and the third count charged that the defendants made mash fit for distillation of spirits, on premises not then and there a distillery duly authorized according to law. Five of the defendants named in the indictment were placed on trial. A verdict of guilty was returned as to four of the defendants, and not guilty as to the remaining defendant. From the judgment on the verdict, the four convicted defendants

have appealed. The specifications of error challenge certain instructions given by the court, the refusal of the court to instruct as requested, and the sufficiency of the testimony to support the verdict.

The facts disclosed by the testimony are substantially as follows: In July, 1928, the appellant Cvitkovic and his father-in-law, one Petrovich, purchased what is known as the West place, or farm, in Maple Valley, King county, Wash., and in October of that year Cvitkovic and his wife leased the premises to one Bojcech. The appellant Boscovich claimed to be in the employ of the lessee at the time of the raid. March 7, 1929, federal prohibition agents discovered a still on the farm, with the usual paraphernalia and about 100 gallons of moonshine whisky, and also discovered a Studebaker automobile there, but none of the defendants was on the premises at that time. On the following morning, the agents returned to the farm and, at intervals during the day, saw Boscovich on the premises, going to and from the still. About 6:30 a. m., March 12th, one of the agents obtained the telephone number of the appellant Cvitkovic, which was unlisted in the telephone directory, by telephoning to the appellant Boskoyceh. The agent then telephoned Cvitkovic, stating that he was a friend of his, and informed him that his still in Maple Valley had been located and was about to be raided, whereupon Cvitkovic uttered an oath and slammed up the receiver. About 7:10 a. m., on the same morning, two of the agents saw Boscovich drive up to the farm in a Nash car and go to the house, where he kindled a fire. A few minutes later they saw him go to the stillhouse, where he was heard working around the vats and barrels. About half an hour thereafter, the agents placed Boscovich under arrest. At that time, the mash and moonshine had been dumped and Boscovich was engaged in dismantling the still. About this time the defendant Sabljak, who was acquitted by the jury, drove onto the farm in a Reo truck and was arrested. A few minutes later a Ford car, driven by Cvitkovic, accompanied by the appellants Boskoyceh and Jandrilovich, stopped on the road in front of the farm, and Boskoyceh and Jandrilovich were arrested after they got out of the car and were on their way to the still. Cvitkovic then drove away, but later in the morning one of the agents, who had gone to a neighboring farm to telephone, saw him in the Ford car, driving along the road, and placed him under arrest. The Studebaker car seen on the farm was found, the day after the raid, in the Jandrilovich garage, and was identified by its license number. The agent who located and identified the automobile also testified that the rear seat bore marks of a keg and that an odor of mash and moonshine emanated from the car. Boscovich admitted that he had manufactured intoxicating liquor on the farm, but denied that he had known any of the other appellants prior to the raid. Jandrilovich admitted ownership of the Ford car which Cvitkovic was driving at the time of his arrest, but claimed that one Fly owned a half interest in it with him, and that he did not know how Cvitkovic got the car that day, unless he borrowed it from Fly. Both Jandrilovich and Boskoyceh denied any previous acquaintanceship with any of the other appellants, and testified that at the time of their arrest they were on their way from a coal mine, where they had been looking for work, and while walking down the road past the farm they were hailed by one of the agents and placed under arrest. But one of the agents not only testified, as already stated, that he saw these two appellants get out of the Ford, but also that their shoes were perfectly clean, although the road was gravel and muddy in spots, and Jandrilovich himself testified that they had walked about a mile along the road and that it was a little muddy. Cvitkovic testified that, at the time he was arrested, he was on his way to see relatives, that he did not know any of the other appellants before the arrest, and that he had borrowed the Ford car from Fly. But a witness for the government testified that he knew Jandrilovich, that he lived across the road from his house, and that he had seen Cvitkovic at the Jandrilovich home many times; and another witness testified that both Cvitkovic and Boskoyceh made payments at the bank on the contract for the purchase of the farm by Cvitkovic and his father-in-law. The testimony of the agent as to the telephone call to Cvitkovic was contradicted by a witness for the appellants, who testified that he was living in the Cvitkovic home on that day, that Cvitkovic was not there, and that it was he who received the telephone call regarding the raid to be made on the still. Cvitkovic also testified that he was not at home on that day and that he did not receive such a call.

The testimony given by some of the appellants to the effect that they had no acquaintance with the others prior to the arrest was thoroughly discredited by other testimony, and the excuse given by some of the appellants for their presence at the scene of the raid was so far contradicted, and so highly improbable in itself, that the jury was amply justified in disregarding it. And, with-

out more, it seems to us that a bare recital of the foregoing facts and circumstances demonstrates the sufficiency of the testimony to support the verdict as against each and all of the appellants.

Upon the trial, the court instructed the jury as follows: "There is a rule of law that if a witness testifies falsely before you in any one particular, it is your duty to mistrust all the balance of his testimony, and if your judgment approves you may reject it all as unworthy of credit, because the law goes on that theory—the law extending this right to you, goes on the theory that you might well say that if 'a witness testified falsely in one particular under oath, how can I determine he will not adhere to his conduct in other particulars? That is a matter for the jury to determine entirely. There is also a rule of law that a witness who thus testifies falsely in one particular may have testified falsely in all, and the jury views his testimony with caution."

To this instruction, counsel for appellants excepted as follows: "I think it is an oversight on your Honor's part—you stated that if a witness testifies falsely to any material matter—I think it should be if he willfully testifies falsely to a material matter."

To which the court responded: "If he testifies falsely at all. If he testifies falsely by mistake in one particular you may ask yourselves whether he has not testified falsely by mistake in other particulars. If he testifies falsely, willfully and intentionally, then, again, you may say whether his oath is worth anything in other particulars."

To bring a case within the maxim, falsus in uno, falsus in omnibus, there must be conscious falsehood, and the falsehood must be upon a material point. Wigmore on Evidence (2d Ed.) §§ 1013, 1014. Within this rule, the instruction as given may not have been technically correct, but the explanation given by the court, distinguishing between false testimony given by mistake and false testimony given willfully and intentionally removed any prejudice that might have resulted.

Error is also assigned to the refusal of the court to instruct the jury that a person could not be convicted of aiding and abetting the commission of the crime charged in the second count of the indictment. This court has ruled otherwise. Vukich v. United States, 28 F.(2d) 666.

The verdict as first returned by the jury found the appellants guilty as to the first and second counts, and was silent as to the third. While the jury was in the box, a verdict of guilty was returned as to the third count also, and error is assigned because of the manner in which the verdict on the third count was brought about. But, inasmuch as there was but one general judgment on all three counts, any error in that regard was not material.

Several other instructions given by the court are assigned as error; but we have already considered the only exceptions taken to the charge.

The judgment is affirmed.