**Louis P. HATTEM, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16467.**

United States Court of Appeals
Ninth Circuit.

Oct. 11, 1960.

Rehearing Denied Nov. 21, 1960.

Russell E. Parson, Los Angeles, Cal.,
Irving D. Apple, Hollywood, Cal., for
appellant.

Laughlin E. Waters, U. S. Atty., Robert J. Jensen, Leila F. Bulgrin, Asst.
U. S. Attys., Los Angeles, Cal., for appellee.

Before BARNES, JERTBERG and
KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

Appellant was found guilty by a jury
verdict of two counts of acquiring or
otherwise obtaining marihuana without
having paid a transfer tax in violation
of 26 U.S.C.A. § 4744(a). The first
count charged that he "knowingly and

unlawfully acquired and obtained" six marihuana cigarettes on June 10, 1958; the second, in identical language, charged him with the acquisition of two such cigarettes on the same day. He was sentenced to five years imprisonment on each count, the sentences to run concurrently. We have jurisdiction under 28 U.S.C.A. § 1291.

The principal question presented is whether the evidence establishes the defense of entrapment as a matter of law.

The pertinent facts show that appellant was arrested in Los Angeles on June 10, 1958 in the apartment of one Kathleen Briggs, a seventeen-year old girl who was then acting as an agent for the Los Angeles Police. Miss Briggs, later Mrs. Wolfe following her marriage before the trial, had been in trouble in 1957 because of her association with young men who had used marihuana; she was never prosecuted in that connection but did testify against them in 1957 at a state trial involving marihuana and was thereafter released in her mother's custody. She first met appellant in November or December 1957 and saw him occasionally at various nightclubs throughout the spring of 1958.

In May 1958, after Kathleen returned from a trip to Las Vegas with her future husband, Lynn Wolfe, and another woman, Wolfe discovered a package of marihuana in Kathleen's purse. She agreed to phone Alfred C. Allen, a police officer assigned to the Juvenile Narcotics Unit, whom she had met during her previous troubles. She testified that she first told Allen "a big wild story" as to where she obtained the marihuana, but finally told him she was ready "to tell the truth" and gave him appellant's name as the person who provided her with the package; she was taken into custody and made a ward of the Juvenile Court.

Officer Allen then investigated the appellant and discovered he had a criminal record: he had been convicted in 1954 by a California State Court of unlawfully possessing one marihuana cigarette and again in 1955 by a federal court for illegally importing a quantity of marihuana into the United States. Allen obtained permission from Juvenile Court to have Miss Briggs released in his custody for the purpose of apprehending appellant in the sale of narcotics; to accomplish this a concealed microphone was placed in Kathleen's apartment at the Chancellor Hotel and through the cooperation of Wolfe, who owned the hotel, a tape recording machine was connected to the microphone by a wire and installed in the adjacent room. Kathleen was then instructed by the police to call appellant and arrange for a sale or delivery of marihuana to her.

The record does not show how Kathleen first contacted appellant, but he came to her apartment on May 29, 1958. The testimony is conflicting as to what was said at this meeting (it was not fully recorded): police officers testified that they overheard appellant say he knew persons who had several "kilos" of marihuana and that he himself had a "can" which was promised to someone else; appellant, however, testified that he informed Kathleen that he was not interested in her request, that he was not a seller of marihuana, and that she should try elsewhere; but he did admit informing her that if she had no success in obtaining the marihuana, he would look into it after he returned from a forthcoming trip to Lake Mead.

Kathleen attempted to reach appellant many times after this meeting and testified that she may have tried to call him by telephone as many as twenty-five or thirty times, but that she actually was able to reach him only about twice. One conversation did occur on June 3rd, and again the testimony is conflicting as to what appellant said. Officer Allen, who listened in on this phone call, testified that appellant stated he could not find his "connection" from whom he could obtain marihuana, but hoped to soon, and if he did, he would bring some over; appellant said that he informed Kathleen he wanted nothing to do with marihuana and that he again had advised her to obtain it elsewhere.

On June 9, 1958 appellant phoned Kathleen: she again importuned him to obtain some marihuana for her and invited him over to her apartment for breakfast the next morning; he again testified, however, that he became angry, disclaimed any interest in procuring marihuana for her, and told her to stop calling him. Nevertheless, he did obtain marihuana in a bar on Sunset Boulevard, Hollywood, later in the same evening and did visit Kathleen the next morning. Appellant admitted that he brought a quantity of marihuana with him and that he then rolled this into six cigarettes; he also admitted smoking one while there and handing two to Kathleen. She then handed appellant $5.00 which she said was payment for a previous delivery of marihuana, but he testified that he never sold her any and that the $5.00, which was later taken from his possession by the police, was payment for a prior loan; she also offered appellant $2.00 for the two cigarettes he had just given her, but he refused to accept any payment for them. Kathleen testified that appellant remarked that he had smoked twelve marihuana cigarettes the evening before, which he denied, and that he also stated he "couldn't live without it." Shortly afterwards the officers entered the room and arrested appellant.[1]

The defense of entrapment has been recognized since the decision of the Supreme Court in Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L. Ed. 413. While there has been a continuing disagreement concerning what the law should be on the subject,[2] there is little doubt at the present time concerning what the law is. In Sherman v. United States, 1957, 356 U.S. 369, 372, 78 S.Ct. 819, 821, 2 L.Ed.2d 848, the Court described the evil of entrapment, quoting from Sorrells, as follows: " * * the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." The Court then set down the guiding principles to be followed:

" * * * the fact that government agents 'merely afford opportunities or facilities for the commission of the offense does not' constitute entrapment. Entrapment occurs only when the criminal conduct was 'the product of the *creative* activity' of law-enforcement officials. * * * To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal. * * * On the one hand, at trial the accused may examine the conduct of the government agent; and on the other hand, the accused will be subjected to an 'appropriate and searching inquiry into his own conduct and predisposition' as bearing on his claim of innocence." 356 U.S. at pages 372–373, 78 S.Ct. at page 821.

The function of the trial judge generally is to determine whether entrapment has or has not been established as a matter of law; but if the question depends upon credibility factors or inferences drawn from conflicting evi-

---

1. We find it unnecessary to consider the evidence relating to Count II; that evidence contains conflicting testimony concerning the government's search of appellant's car after his arrest wherein the two marihuana cigarettes mentioned in Count II were seized. The defense of entrapment appears equally relevant to both counts, and if sustained, both counts must fall; if not sustained, both should stand. Even if the conviction under Count II were reversed, however, appellant was given concurrent five years sentences on each count, so that if the conviction as to Count I is affirmed, the judgment and sentence must be affirmed. Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639; Chin Bick Wah v. United States, 9 Cir., 1957, 245 F. 2d 274.

2. See Mr. Justice Roberts' concurring opinion in Sorrells v. United States, 287 U.S. at page 453, 53 S.Ct. at page 216, and Mr. Justice Frankfurter's concurring opinion in Sherman v. United States, 356 U.S. at page 378, 78 S.Ct. at page 823.

342

dence, it presents a question of fact which must be submitted to the jury. Sherman v. United States, supra, 356 U.S. at page 377, 78 S.Ct. at page 823; see also, United States v. Wallace, 3 Cir., 1959, 269 F.2d 394; Bruno v. United States, 9 Cir., 1958, 259 F.2d 8; Annotation, 33 A.L.R.2d 883, 902. In the present case, the district judge did not find entrapment as a matter of law, but he did submit that issue to the jury under proper instructions.

██ We think his ruling was correct. The testimony and other evidence adduced at the trial tends to show on the one hand that appellant was not only a "user" and had been convicted twice before of possessing marihuana, but that he appeared to be still actively engaged in acquiring it and was in contact with his sources of supply; in short, he appeared predisposed to illegally obtain and acquire marihuana on his own initiative. On the other hand, appellant's testimony tends to show that he was a marihuana addict attempting to rid himself of the habit and tried in vain to resist the persistent pleas of Kathleen Briggs, acting as agent for the government and under its direction, until he finally gave in at her behest; in short, his disposition to obtain marihuana was "implanted" by the government through Kathleen, and but for her persuasion he would not have done so.

Under these circumstances, we cannot say as a matter of law that entrapment has been established. There are two substantially different versions of what occurred; their verity depends upon the credibility resolutions made and inferences drawn from conflicting evidence. See Roth v. United States, 8 Cir., 1959, 270 F.2d 655. As such, the issue was a proper one for the jury.[3]

Appellant relies on Sherman v. United States, supra, where entrapment was found as a matter of law. That case is readily distinguishable from this one; there it was undisputed that the government agent sought by continuous appeals to his sympathy to induce the defendant, who was then taking a cure for narcotics addiction, to obtain a source of narcotics for the agent; he succeeded in convincing the defendant to return to the habit as well. Here we are not ·faced with even an analogous situation unless appellant's testimony is believed, and the government's ignored, completely; such resolutions, under the Sherman case, are for the jury.

Further, it is significant that in Sherman, the defendant was convicted for selling narcotics under 21 U.S.C.A. § 174; the sale and profits therefrom were the criminal germs implanted in the mind of the defendant by the government. Not so here. Appellant was convicted only of "obtaining" marihuana, and it is far from clear that this acquisition was borne out of Kathleen's requests for the narcotic. For example, the fact that he admitted giving her only two of the six marihuana cigarettes, asked her to smoke one with him, and though she declined, smoked it himself anyway, demonstrates that his acquisition was not solely for her benefit alone. Of course, the government cannot avoid entrapment merely by charging the defendant with acquiring or obtaining rather than with selling marihuana, but the facts presented here tend to show that appellant, while perhaps not a seller, was not unfavorably disposed to acquiring marihuana for his own use.

We are more inclined to think that this case is controlled by Masciale v. United States, 1958, 356 U.S. 386, 78 S.Ct. 827,

3. It is noteworthy that as a matter of substance, this conclusion is apparently in accord with the present minority view of the Supreme Court (see note 2, supra). The difference is that while the minority would agree with the majority, for somewhat different reasons, that entrapment was not established as a matter of law, the case would be remanded to the trial judge for his determination, which would be final. See Mr. Justice Frankfurter's dissenting opinion in Masciale v. United States, 356 U.S. 386, at page 389, 78 S.Ct. 827, at page 829, 2 L.Ed.2d 859.

2 L.Ed.2d 859 decided the same day as Sherman, where the Court found that the testimony on the issue of entrapment was conflicting and therefore properly submitted to the jury. We conclude, as the Court did there, that "[w]hile petitioner presented enough evidence for the jury to consider, they were entitled to disbelieve him * * * and so find for the Government on the issue of guilt." 356 U.S. at page 388, 78 S.Ct. at page 829.

Appellant does urge a second point, namely, that he was denied a fair trial. However, we find no merit to this contention because none of the facts recited in support of it, either individually or collectively, scratch the surface of what are constitutionally recognized as the procedural or substantive safeguards of a fair trial; nor have we found any in our search of the record.

In support of this contention, however, he urges the fact that Kathleen recanted a portion of her direct testimony; he stresses that on cross-examination she stated that she did not obtain the marihuana found by Lynn Wolfe in her purse on May 27, 1958 from the appellant, but rather acquired it while in Las Vegas through one Frank Assunto, who made arrangements there for her to obtain it from a friend; in addition he points out that she also testified on cross-examination that she had been threatened with "jail" by government counsel. By this appellant is apparently urging that Kathleen was compelled to testify falsely as to where she obtained this marihuana.

Government counsel was permitted to impeach Kathleen as an adverse witness because of this surprise testimony; this was accomplished by introducing her testimony from another proceeding in which she stated unequivocally that she had asked for and received the package of marihuana from the appellant before leaving for Las Vegas. Further, she admitted that the purported "threat" by government counsel was made one week before the trial began and consisted of the single statement that "[t]hey put pregnant women in jail also." Thus, it is not only doubtful that her changed testimony was itself truthful, but the statement ascribed to government counsel, if made at all, appears wholly insufficient to constitute a real threat designed to coerce particular false testimony.

Appellant does not, and indeed could not, contend that he was convicted on Kathleen's perjured or false testimony. The question of whether she had previously testified falsely was for the jury, and the district judge submitted the issue to them under the following instruction:

> If you find that any witness in this trial has wilfully testified falsely as to any material fact in the case, then you are at. liberty wholly to disregard all of the testimony of that witness, if you consider it to be wholly unworthy of credence. However, you are not obliged to so disregard all of the testimony of such witness and should not do so if, and to the extent that, in your opinion any part or parts of such testimony be worthy of belief.

This instruction was a correct statement of the law and afforded appellant the opportunity to have the question fairly determined by the jury. See Shelton v. United States, 1948, 83 U.S.App.D.C. 257, 169 F.2d 665; Mason v. United States, 5 Cir., 1938, 95 F.2d 612.

Moreover, there was other testimony directly bearing on this question: Officer Allen corroborated Kathleen's earlier testimony that she told him she had received the marihuana from appellant, and Frank Assunto unequivocally denied that he arranged for a delivery of marihuana to Kathleen from a friend in Las Vegas. It is significant also that Kathleen did not at any time recant the other, and major, portions of her previous testimony. Thus, there is serious doubt whether her initial testimony was false at all, and the jury was entitled, on the evidence before us, to accept or reject that testimony. Whether accepted or rejected, the evidence was sufficient to go

**344**

to the jury on the question of entrapment without prejudicing appellant's right to a fair trial.

Affirmed.