**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ENYING LI,<br>　　　　　　　　　*Petitioner*,<br><br>　　　　　v.<br><br>ERIC H. HOLDER, JR., Attorney<br>General,<br>　　　　　　　　　*Respondent*. | No. 08-70586<br><br>Agency No.<br>A098-462-999<br><br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted August 29, 2013[*]
Pasadena, California

Filed December 31, 2013

Before: Diarmuid F. O'Scannlain, Carlos T. Bea,
and Morgan Christen, Circuit Judges.

Opinion by Judge Bea;
Dissent by Judge Christen

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Immigration

The panel denied a petition for review of the Board of Immigration Appeals' denial of asylum and related relief on adverse credibility grounds, holding that the Board and immigration judge may use the maxim *falsus in uno, falsus in omnibus* (*i.e.* false in one thing, false in everything) to find that material inconsistencies in testimony regarding one claim support an adverse credibility determination on another claim in a pre-REAL ID Act case.

The panel held that substantial evidence supported the Board's determination that petitioner's testimony included material inconsistencies concerning her religious persecution claim, and that the Board therefore properly discredited all of petitioner's testimony, including testimony concerning her family planning claim.

Dissenting, Judge Christen wrote that the majority announces a new rule permitting adverse credibility findings to wash over from one asylum claim to another, regardless of whether inconsistencies that give rise to an adverse credibility finding "go to the heart of" the separate asylum claim, as required in pre-REAL ID Act cases.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Evan Lee Murri, Law Offices of Evan L. Murri, PLC, San Gabriel, California; Dixon Wong, Law Offices of Dixon Wong, Pasadena, California, for Petitioner.

Yedidya Cohen, United States Department of Justice, Washington, D.C.; Douglas E. Ginsburg and David V. Bernal, Assistant Directors, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

**OPINION**

BEA, Circuit Judge:

Enying Li was denied asylum, withholding of removal pursuant to § 241(b)(3) of the Immigration and Nationality Act, and withholding of removal pursuant to the Convention Against Torture ("CAT") on two separate claims of past persecution because the Immigration Judge ("IJ") found her testimony regarding one of her claims not credible. We must now decide whether an IJ may use the maxim *falsus in uno, falsus in omnibus* (*i.e.* false in one thing, false in everything) to find that material inconsistencies in testimony regarding one claim support an adverse credibility determination on another claim in a pre-REAL ID Act case. We hold the maxim *falsus in uno, falsus in omnibus* may be used by an immigration judge, and we deny Li's petition.

## I. Background

Li, a citizen of China of Korean and Chinese descent, entered the United States without being admitted or paroled. She filed an application for asylum, withholding of removal under the Immigration and Nationality Act, and withholding of removal under CAT, claiming she had suffered religious persecution and had been subject to China's restrictive population control measures. Subsequently, the former Immigration and Naturalization Service commenced removal proceedings against Li by filing a Notice to Appear and charging her with removability for being present in the United States without having been admitted or paroled.

## A. Forced Abortion Claim

At the merits hearing, Li testified that she found out she was pregnant with her second child one month after her husband's death. When asked about China's one-child policy, Li testified that Korean-Chinese persons like herself were permitted to have two children. But she testified that her employer would not allow her to have the child because she did not have a husband. Li testified that she then went to stay at her aunt's house. While there, someone noticed she was visibly pregnant and reported her to a women's social organization. After this report, Li testified she was forced to have an abortion.

## B. Religious Persecution Claim

After Li's husband passed away, a friend recommended that she go to church. Li testified that she attended a Christian church for the first time on April 6, 2003, and at least twice a week after that date. She stated that it was a

home church service and that the church attendees kept changing the location because the government was searching for home church services. On November 7, 2004, a service was held at Li's house. Li testified that one of the deacons was giving a sermon when there was a knock on the door. Li went to the door and between four and six police officers raided her home.

The police arrested Li and the other home church attendants and took them to the police station. She testified that she was detained for about ten days, during which time she was interrogated and hit with an "electric stick." She was released after she paid a fine of 5,000 yuan, but she was still required to report to the police station once a week. Although Li testified that she had attended the home church from April 6, 2003, until November 7, 2004, a period of nineteen months, she later stated on cross-examination that she had not been baptized because people had to practice in the home church for six to twelve months before they could be baptized.

## C. Passport Inconsistency

Li testified that she used a Chinese passport to leave China. When asked when she had obtained the Chinese passport, Li stated, "On March the 18th [of 2005]. I think—I think that's December 18th. It's been a long time." She was then asked by her counsel how she could have received a passport in December 2005 when she left China in February 2005. Li stated that she applied for the passport "way before." Li stated that while she was pregnant at her aunt's house, her sister had told her that, if Li had a passport, she could leave China. Later in the hearing, she was asked, "[Y]ou obtained your passport in December 2003. Is that

correct?" Li replied, "Yes, I received my passport at that time." On cross-examination, she also testified that she applied for her passport because her husband had passed away and she had trouble with the police as a result of attending home church. The IJ asked, "But ma'am, you didn't have any trouble with the home church until November 2004. Correct?" Li then stated, "that has nothing to do with this passport."

### D. IJ and BIA Decisions

The IJ denied Li's applications for asylum, withholding of removal, and CAT relief. He found that she had not provided credible testimony in two ways: (1) she provided contradictory testimony regarding the circumstances surrounding the receipt of her passport, and (2) she testified that she was not baptized in China because she was a new church member and had not participated in church services for the requisite six to twelve months, but she also testified that she had attended for a period of nineteen months (from April 6, 2003, until her arrest on November 7, 2004). The IJ held that "[t]he testimony goes to the heart of her claim and causes the Court to doubt her credibility regarding her participation in Chinese home church activities." The BIA affirmed the IJ's denial of relief, found that the discrepancies went to the heart of Li's religion-based asylum claim, and held: "The respondent's lack of credibility as to these issues also taints her credibility with respect to her forced-abortion claim."

### II. Standard of Review

The court's review of a BIA's determination is highly deferential. *Gu v. Gonzales*, 454 F.3d 1014, 1018 (9th Cir.

2006).    This court reviews BIA credibility findings for substantial evidence and reverses "only if the evidence compels a contrary conclusion." *Singh v. Gonzales*, 439 F.3d 1100, 1105 (9th Cir. 2006).  Under this pre-REAL ID Act standard of review, "the IJ or BIA must identify specific, cogent reasons for an adverse credibility finding" and the reasons must "strike at the heart of the claim." *Id*. (internal quotation marks and citation omitted.)

### III. Analysis

Li argues that it was impermissible for the BIA to find her entire testimony not credible because it found her testimony regarding her religious persecution claim not credible.[1]  We disagree. *Falsus in uno, falsus in omnibus* is a hoary maxim which allows a fact-finder to disbelieve a witness's entire testimony if the witness makes a *material* and *conscious* falsehood in one aspect of his testimony. *Cvitkovic v. United States*, 41 F.2d 682, 684 (9th Cir. 1930).  The maxim is based on the logic that a person may mistakenly testify wrongly and still be believable, but if a person testifies falsely, willfully, and materially on one matter, then his "oath" or word is not "worth anything" and he is likely to be lying in other respects. *Id*.  The law of this circuit permits the use of the maxim *falsus in uno, falsus in omnibus* in the immigration context. *See Lopez-Umanzor v. Gonzales*, 405 F.3d 1049, 1059 (9th Cir. 2005).

---

[1] Li does not clearly argue that the inconsistencies in her testimony cannot support an adverse credibility ruling with regard to the religious persecution claim.  Regardless, the argument has no merit.  The BIA listed two specific, material inconsistencies which are supported by the record. These inconsistencies involve when and how long Li was involved in the home church and thus strike at the heart of her religious persecution claim.

In *Lopez-Umanzor*, a pre-REAL ID Act immigration case, the petitioner applied for cancellation of removal and voluntary departure. *Id.* at 1050. The IJ denied relief and the BIA affirmed. *Id.* The petitioner appealed the BIA decision arguing the IJ's decision was improperly based on personal bias regarding domestic violence. *Id.* The IJ had denied her application because he found the petitioner's testimony regarding claims of domestic violence were not credible and he had "reason to believe" she had been involved in drug trafficking. *Id*. at 1050–51. The IJ found it unbelievable that the petitioner would return to her abuser, or that her abuser would have the desire or ability to find petitioner, had petitioner really tried to escape. *Id.* at 1054. Petitioner appealed the decision to this court and this court granted the petition and remanded. *Id.* at 1060.

This court found that the IJ's view of the applicant's credibility as to the domestic violence claim was improperly based on the IJ's personal speculation, bias, and prejudgment about domestic violence. *Id*. at 1054. The court reasoned this prejudgment as to the domestic violence claim *may* have infected the IJ's assessment of Petitioner's testimony regarding Petitioner's vulnerability to drug trafficking because the IJ may have followed "long recognized" law that a witness "deemed unbelievable as to one material fact may be disbelieved in all other respects," also known by the maxim "*falsus in uno, falsus in omnibus*." *Id*. at 1059. The court remanded to a different immigration judge for further proceedings. *Id.*

The court in *Lopez-Umanzor* thus acknowledged that the maxim "*falsus in uno, falsus in omnibus*" may properly be

used to evaluate witness testimony in immigration cases.[2] Further, the maxim is the general law of the Ninth Circuit. *See Hattem v. United States*, 283 F.2d 339, 343 (9th Cir. 1960) (approving a jury instruction that provided "[i]f you find that any witness in this trial has wilfully testified falsely as to any material fact in the case, then you are at liberty wholly to disregard all of the testimony of that witness")[3]; *Lozano Enters. v. NLRB*, 327 F.2d 814, 816 n.2 (9th Cir. 1964) (holding that while "a witness *may* be totally disbelieved if he is found to have testified falsely in any respect," this permissive rule "is not a *command*" that such a witness be disbelieved (emphasis added));[4] Ninth Circuit Model Criminal Jury Instructions 3.9 (2010) (stating that jurors may disbelieve all of a witness's testimony based on whether other evidence contradicted the testimony or any other factors that bear on believability); Ninth Circuit Model

---

[2] Well-reasoned dicta is the law of the circuit. *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc).

[3] In *Hattem*, the petitioner appealed a criminal conviction based on several errors, one of which was a jury instruction allowing jurors to disregard the entire testimony of any witness who had willfully testified falsely as to any material fact. 283 F.2d at 343. The court approved the jury instruction as a correct statement of the law and affirmed the conviction. *Id.* at 343–44.

[4] In *Lozano Enterprises*, the petitioner sought review of an NLRB order based on several claims of error. 327 F.2d at 815. One claimed error was that the Board had credited most of a witness' testimony despite an inconsistency in the testimony. *Id.* at 816 n.2. The employer claimed that the entire witness' testimony should be discredited because there was an inconsistency. *Id.* The court stated that, while a witness *may* be disbelieved entirely if he is found to have testified falsely in any respect, no rule mandates that such a witness be disbelieved. *Id.* The court did not discredit the testimony entirely and affirmed that it was proper for the testimony to be weighed by a trier of fact. *Id.*

Civil Jury Instructions 1.11 (2007) (same). The maxim is also supported by unpublished cases.**[5]**

Another circuit, the Second Circuit, has also used the maxim in the context of pre-REAL ID Act immigration cases. In *Siewe v. Gonzales*, 480 F.3d 160, 161 (2d Cir. 2007), Felix Siewe, a citizen of the Republic of Cameroon, sought review of a BIA opinion affirming a decision of an IJ denying Siewe's application for asylum, withholding of removal, and relief under CAT. Siewe claimed that the IJ's adverse credibility finding was not supported. *Id.* The Second Circuit disagreed and denied the petition. *Id.* The Second Circuit found that Siewe was not credible because he gave inconsistent dates for important events. *Id.* at 162. In so holding, the Second Circuit stated that "an IJ's application of the maxim *falsus in uno, falsus in omnibus* [false in one thing, false in everything] may at times be [correct]." *Id*. at 170. The court reasoned that, "In the immigration context, corroborating evidence is often limited, and the petitioner's credibility is almost always crucial. So a single false document *or a single instance of false testimony* may (if attributable to the petitioner) infect the balance of the alien's uncorroborated or unauthenticated evidence ." *Id.* (emphasis

---

**[5]** *See Wang v. Mukasey*, 262 F. App'x 798, 800 (9th Cir. 2008) (unpublished) (reasoning that, in an immigration case, "[o]ur law has long recognized that a person who is deemed unbelievable as to one material fact may be disbelieved in all other respects"); *Chen v. Ashcroft*, 112 F. App'x 633, 636 (9th Cir. 2004) (Bea, J., concurring) (noting that "this court's remand does not eliminate the opportunity for the IJ to follow the well-established doctrine of *falsus in uno, falsus in omnibus* . . . . "). *But see Zhu v. Mukasey*, 261 F. App'x 43, 44 (9th Cir. 2007) (unpublished) (holding that inconsistencies in one claim do not "go to the heart of" the petitioner's second claim and could not support an adverse credibility finding).

added).  The court further explained "*Falsus in uno* is a natural and instinctive tool of the factfinder, like a carpenter's hammer or plumber's wrench."  *Id.* at 171.  Thus, the court found that the IJ's adverse credibility finding was supported by substantial evidence.  *Id.*

Not only is *falsus in uno, falsus in omnibus* the law of the Ninth Circuit, it is consistent with the pre-REAL ID Act standard of review.  Under the pre-REAL ID Act standard of review, adverse credibility findings require specific, unexplained reasons that "strike at the heart of the [asylum] claim."  *Singh*, 439 F.3d at 1105.  This standard developed in response to IJs' adverse credibility findings based on minor inconsistencies in petitioners' testimonies which could result from mistranslation or miscommunication.  *See, e.g.*, *Maini v. INS*, 212 F.3d 1167, 1177 (9th Cir. 2000) citing, *inter alia*, *Vilorio-Lopez v. INS*, 852 F.2d 1137, 1142 (9th Cir. 1988).  However, requiring the reason for an adverse credibility finding go to the heart of the claim did not prohibit overall findings of adverse credibility based on *material* misstatements, which is consistent with the *falsus in uno* maxim.

*Ceballos-Castillo v. INS* is an early case holding that inconsistencies must go to the heart of an asylum claim.  904 F.2d 519, 520 (9th Cir. 1990).  In *Ceballos-Castillo*, the petitioners appealed the BIA's denial of their application for asylum and withholding.  *Id.*  The BIA had held that "the aliens' *claims* were not credible because of inconsistencies in their testimony . . . ."  *Id.* (emphasis added).  The petitioners argued that the inconsistencies were minor and could not support the determination.  *Id.*  This court held that the inconsistencies—which included switching one claim from guerrilla persecution to government persecution, how the

petitioners obtained their passports, and whether one of the petitioners was subject to a capture order—"involved the heart of the asylum claim." *Id.*  The court held that "the finding of the BIA that the aliens' testimony was incredible finds substantial support in the record." *Id.* at 521.

In *Jibril v. Gonzales*, 423 F.3d 1129 (9th Cir. 2005), the IJ found the petitioner's testimony to be not credible, and the petitioner asked for review of a BIA decision, claiming the IJ's adverse credibility finding was not supported by the evidence. *Id.* at 1133–34.  The BIA affirmed the IJ's finding of adverse credibility because of inconsistencies in the petitioner's testimony. *Id.* at 1133.  On appeal, this court noted that the IJ's specific inconsistences were that the petitioner remembered some details of the gun, dress, and conversations of men who attacked him, but not complete details. *Id.* at 1134.  The court found that these reasons were minor inconsistencies that were explainable by the circumstances of the attack. *Id.* at 1135.  The court held that *minor* inconsistencies are an inadequate basis for an adverse credibility finding and did not go to the heart of the claim. *Id*.  Because the court found the inconsistencies were minor, the court granted the petition and remanded. *Id*. at 1139.

The maxim of *falsus in uno, falsus in omnibus* is consistent with the pre-REAL ID Act standard of review because both require that falsity be *material* and central to the claim, not minor.  Here, the inconsistencies in Li's testimony are not minor: inconsistencies regarding how long she was involved in her home church and when and why she applied for a passport are central to determining whether she suffered religious persecution.  While these inconsistencies concern material aspects of her religious persecution claim for asylum, they do not touch upon her forced abortion claim.

But Li is the same person who testified about both her claims. Whether she is a credible witness is central to any claim—religious persecution or forced abortion. Her credibility goes to the heart of either and both claims.

To hold otherwise would be to encourage asylum seekers to make as many claims for asylum as possible, in the hope that as to one, the IJ did not find any inconsistency that went to the "heart of the matter." Thus, an asylum seeker who lied through three of his claims, but managed to recite a fourth uncontradicted, would skirt an adverse credibility finding as to the fourth. This result is not, and cannot be, the law. This is not the law in other circuits either. The cases cited by the dissent are distinguishable from this case. *See Mansour v. INS*, 230 F.3d 902, 908 (7th Cir. 2000) (adverse credibility finding not relevant to claim based on whether person is part of a certain ethnic/religious group);[6] *Guo v. Ashcroft*,

---

[6] In *Mansour*, a petitioner was denied asylum because the IJ found him not credible. 230 F.3d at 905. The BIA affirmed. *Id.* The petitioner then moved to reopen proceedings based on a new CAT claim based on his ethnic/religious group. *Id.* The BIA denied the motion to reopen, but labeled the petitioner as a Syrian Christian instead of an Assyrian Christian. *Id.* at 907–08. On appeal, the Seventh Circuit granted the petition for review and remanded. *Id.* at 909. The Seventh Circuit was "not comfortable with allowing a negative credibility determination" in an *earlier* asylum hearing to affect a subsequent torture claim based on the petitioner's ethnic/religious affiliation, especially when the BIA had not stated the petitioner's ethnic/religious group correctly. *Id.* at 908. The court determined that "the prior adverse credibility determination is not necessarily significant in this situation" without explaining *why* the prior adverse credibility determination was not significant. *Id.* But, after this conclusion, the Seventh Circuit considered the U.S. Department of State report and found that persons of petitioner's ethnic/religious group had suffered "systematic discrimination" and repression. *Id.* A fair reading of *Mansour* is that on remand the BIA needed to identify the petitioner's ethnic/religious group and consider whether this classification would

386 F.3d 556, 559 (3d Cir. 2004) (prior adverse credibility determination on a religious persecution claim was not relevant to an asylum claim based on fear of persecution under China's one-child policy when it was not disputed that petitioner now had two American-born children)[7]; *Paul v. Gonzales*, 444 F.3d 148, 150 (2d Cir. 2006) (prior adverse credibility determination as to petitioner's "stories" of past persecution was not relevant to petitioner's claim of fear of future persecution when it was not disputed he was a

---

allow him CAT relief, regardless whether the petitioner was not credible. It is well established that, unlike what is the case in asylum cases, an adverse credibility finding does not always bar CAT relief. *Shrestha v. Holder*, 590 F.3d 1034, 1049 (9th Cir. 2010) ("finding that an adverse credibility determination is not "necessarily a death knell to CAT protection" but that when petitioner's "testimony [is] found not credible, to reverse the BIA's decision [denying CAT protection,] we would have to find that the reports alone compelled the conclusion that [the petitioner] is more likely than not to be tortured" (alternations in original)).

[7] In *Guo*, the petitioner applied for asylum and withholding of removal because of religious persecution. 386 F.3d at 560. An IJ denied Guo's application for asylum because she was not credible, and the BIA affirmed. *Id.* Three years later, Guo filed a motion to reopen the proceedings based on intervening developments including giving birth to one child in the United States and becoming pregnant with a second child. *Id.* The BIA denied the motion to reopen based on her previous negative credibility determination and a lack of evidence that Chinese officials punish nationals who have given birth to children in foreign countries. *Id.* The Third Circuit granted the petition and remanded. *Id.* at 566. The Third Circuit held that the previous adverse credibility finding was not relevant to this motion to reopen when it was not disputed that she now had two children. *Id.* at 562 & n.6. Whether *Guo* was untruthful three years previous did not change the fact she now had two children.

Christian in Pakistan).**⁸** *Mansour*, *Guo*, and *Paul* all involve a prior adverse credibility determination incorrectly affecting a subsequent claim based on an undisputed fact: in *Mansour* that the petitioner was an Assyrian Christian, in *Guo* that the petitioner had given birth to two children in the United States, and in *Paul* that the petitioner was a practicing Christian. The maxim *falsus in uno*, *falsus in omnibus* should not be applied when the truthfulness of the witness has no bearing on the claim, as is the case when the claim is based on proveable fact such as having two children or an undisputed ethnic classification. Here, however, Li offers no evidence of her concurrent claims other than her testimony; whether the IJ found Li to be a liar as to part of that testimony is entirely relevant, and material, to both her claims.

The dissent also points out that immigration proceedings, on average, take many years, which may lead to inconsistences based on faulty memory—not untruthfulness—and that aliens fleeing their country because of persecution are not always able to grab corroborating documentation. The dissent also cites *Kadia v. Gonzales*,

---

**⁸** Petitioner Paul, a citizen of Pakistan, sought asylum and withholding of removal. *Paul*, 444 F.3d at 150. The IJ found Paul's "stories" of past persecution not credible, but explicitly credited petitioner's testimony that he was a practicing Christian. *Id.* The BIA affirmed the IJ's decision. *Id.* at 152. About two months after the BIA's decision, petitioner filed a motion to reopen the proceedings based on an updated country report that showed increasingly harsh conditions in Pakistan for Christians. *Id.* The BIA denied the motion on the ground the evidence was not relevant to the IJ's original adverse credibility determination. *Id.* The petitioner appealed and this court granted the petition and remanded. *Id.* at 157. The court held that, "In the instant case, because the IJ credited Paul's testimony that he was, in fact, a practicing Christian, a claim based on Paul's fear that he will be persecuted in the future because of his religious beliefs remained viable." *Id.* at 154 (emphasis omitted).

501 F.3d 817, 821 (7th Cir. 2007), a Seventh Circuit case which disapproves of the maxim on the grounds that human memory is fallible and memory "slips" do not mean a witness is unreliable.  As Judge Posner's decision makes clear, he believes the maxim applies to "the mistakes that witnesses make in all innocence" as well as "slips that . . . show the witness is a liar." *Id.* at 822.  That may be how the maxim is applied in that circuit.  That is not how it is applied here.  The maxim is applied in this circuit not when the witnesses makes a "mistake in all innocence," but *only* when the "witness . . . has willfully testified falsely as to any material fact." *Hattem*, 283 F.2d at 343 (emphasis added).   Minor inconsistencies due to a lapse of time and faded memories are not the type of *material*, *intentional*, false testimony which allows the use of *falsus in uno*, *falsus in omnibus*.  Further, we trust that IJs are aware of these problems with gathering evidence while fleeing, and we do not hold that IJs should discredit otherwise credible testimony based solely on a lack of corroborating evidence.

This court gives IJs the deference to exercise their common sense in making credibility findings:

> [A]n IJ must be allowed to exercise common sense in rejecting a petitioner's testimony even if the IJ cannot point to specific, contrary evidence in the record to refute it.  Without such latitude, IJs would be bound to credit even the most outlandish testimony as long as it was internally consistent and not contradicted by independent evidence in the record.

*Jibril*, 423 F.3d at 1135. Further, while an applicant may establish his case through his testimony alone, *Karouni v. Gonzales*, 399 F.3d 1163, 1174 (9th Cir. 2005), the testimony establishes the claim only if the testimony is *credible*. 8 C.F.R. § 1208.13 ("The testimony of the applicant, *if credible*, may be sufficient to sustain the burden of proof without corroboration.") (emphasis added). The credibility of witnesses is thus material and central to all their asylum claims.

In conclusion, Ninth Circuit precedent permits the BIA to use an adverse credibility finding on one claim to support an adverse finding on another claim in a pre-REAL ID Act case. Li's petition for review is **DENIED**.

---

CHRISTEN, Circuit Judge, dissenting:

The decision issued by our court today announces a new rule permitting adverse credibility findings to wash over from one asylum claim to another, whether inconsistencies that give rise to an adverse credibility finding "go to the heart of" the separate asylum claim, or not. Because this new rule cannot be squared with this circuit's pre-REAL ID Act case law mandating that adverse credibility findings must go to the heart of an applicant's claim, I respectfully dissent.

## I. The BIA Erred By Upholding an Adverse Credibility Finding that Did Not Go "To the Heart" of Li's Pre-REAL ID Act Claim.

Li, a citizen of China, presented two claims for asylum to the immigration court. One was based on undergoing a

forced abortion; the other was based on religious persecution for participating in a home church. Regarding the forced abortion claim, Li testified that she discovered she was pregnant a month after her husband's death. She was told by authorities that she would not be permitted to give birth to a second child because she was an unmarried woman with one child. Li escaped to her aunt's house in the countryside, but several months later she was discovered and forced to have a late-term abortion. According to her testimony, Li was tied to the hospital bed, her unborn child was killed with a needle, and she delivered the stillborn child.

Regarding the religious persecution claim, Li testified that in April 2003 she became involved in a home church, and in November 2004 the police raided the church, arrested her, and detained her for ten days. She testified that she applied for a passport in part because of religious persecution. She also testified that she had never been baptized. The IJ found that Li lacked credibility for two reasons. First, the IJ found that Li provided contradictory testimony regarding the circumstances under which she obtained her passport because she applied for the passport in September 2003, before her alleged arrest in November 2004. Second, the IJ found that Li was inconsistent regarding why she was never baptized. Her stated reason was that she believed she needed to be a practitioner for six months to a year before she could be baptized. But she also testified that she was a member of the home church from April 2003 until her arrest in November 2004, a period of approximately nineteen months.

After finding that Li's testimony concerning her religious persecution claim was not credible, the IJ dismissed both of her asylum claims. The IJ made no findings at all with

respect to the merits of the asylum claim based on forced abortion.

The BIA affirmed the denial of Li's petition, citing *Lopez-Umanzor v. Gonzales*, 405 F.3d 1049 (9th Cir. 2005), as authority for what it called "the Ninth Circuit's well-settled case law that a person who is deemed unbelievable as to one material fact may be disbelieved in all other respects."  But the BIA miscited *Lopez-Umanzor*, which actually involved a petitioner's claim for cancellation of removal based on a denial of due process.  The petitioner in that case testified she was a victim of domestic violence and offered medical records to corroborate the injuries she had sustained, *id.* at 1050–51, but she was not permitted to introduce expert testimony on domestic violence, *id.* at 1052, 1056.  The posture of the case required the IJ to assess the petitioner's credibility and weigh it against that of a police officer who testified that petitioner was involved in drug trafficking.  *Id.* at 1053.  Our court was clear that if the agency properly concluded the petitioner was a drug trafficker, she was ineligible for cancellation of removal.  *Id.* at 1059.  But because the IJ's finding that the petitioner lacked credibility regarding domestic violence rested on the IJ's "personal speculation, bias, conjecture, and prejudgment," *id.*, and because the IJ's "preconceived view of her credibility on that point" may have affected his resolution of the drug-related credibility dispute, our court decided that petitioner established prejudice, *id.* at 1058.  The court remanded for a new credibility determination, suggesting that a different judicial officer should hear the case.  *Id.* at 1059.  *Lopez-Umanzor* did not discuss exporting an adverse credibility finding from one asylum theory to a separate and unrelated asylum theory.

Underscoring that *Lopez-Umanzor* did not settle the question of credibility spill over in the asylum context, our court addressed this issue twice after it published *Lopez-Umanzor*, and reached opposite outcomes in unpublished decisions. *See Wang v. Mukasey*, 262 Fed. App'x 798, 800 (9th Cir. 2008); *Zhu v. Mukasey*, 261 Fed. App'x 43, 44 (9th Cir. 2007). In *Wang*, our court held that one adequately-supported adverse credibility determination was sufficient to uphold rejection of two different claims for asylum. 262 Fed. App'x at 800–01. But in *Zhu*, our court granted a petition for review and withholding of removal where the IJ had non-speculative reasons for disbelieving Zhu's political persecution claim and the inconsistencies "did not go to the heart of Zhu's alternative claim that his wife had suffered a forced abortion." 261 Fed. App'x at 44 (citation omitted).

The rule announced by the court today, that an adverse credibility determination on any theory of asylum is sufficient to dismiss an asylum petition based on a completely different theory, defies well-settled pre-REAL ID Act precedent that adverse credibility findings must go to the heart of a petitioner's claim. *See Singh v. Gonzales*, 439 F.3d 1100, 1105 (9th Cir. 2006) ("[T]he IJ or BIA must identify 'specific, cogent reasons' for an adverse credibility finding, and the reasons must be substantial and legitimately connected to the finding. This means that the reason identified must 'strike at the heart of the claim' for asylum." (citations omitted)).

Other circuits have been unwilling to allow one adverse credibility determination in an immigration case to dictate the outcome of unrelated claims. For example, the Seventh Circuit vacated and remanded a Convention Against Torture ("CAT") determination, writing that "[w]e are not

comfortable with allowing a negative credibility determination in the asylum context to wash over the torture claim; especially when the prior adverse credibility determination is not necessarily significant in this situation." *Mansour v. INS*, 230 F.3d 902, 908 (7th Cir. 2000).[1] The Seventh Circuit has also described the doctrine relied upon by the majority, *falsus in uno, falsus in omnibus* (false in one thing, false in all things), as "discredited," *Kadia v. Gonzales*, 501 F.3d 817, 821 (7th Cir. 2007), and endorsed the characterization of it as "absolutely false as a maxim of life," *United States v. Schimmel*, 943 F.2d 802, 808 (7th Cir. 1991). In *Kadia*, Judge Posner explained:

> Human memory is selective as well as fallible, and the mistakes that witnesses make in all innocence must be distinguished from slips that, whether or not they go to the core of the witness's testimony, show that the witness is a liar or his memory completely unreliable.

501 F.3d at 822.

Several circuits limit the preclusive effect of unrelated adverse credibility determinations when considering motions

---

[1] *Mansour* involved a petitioner who moved to reopen proceedings based on a new CAT claim after the IJ had found him not credible and denied his asylum claim. The court further wrote that "the BIA's adverse credibility determination in the asylum context seems to overshadow its analysis of Mansour's torture claim. The BIA in a minimalistic and non-detailed manner addressed Mansour's torture claim; leaving us to ponder whether the BIA sufficiently focused on this claim or merely concluded it was not viable because of its determination that Mansour's prior testimony on the asylum issue was not credible." 230 F.3d at 908.

to reopen asylum claims based on changed circumstances. The Third Circuit observed, "[n]or does one adverse credibility finding beget another. On the contrary, an IJ must justify each adverse credibility finding with statements or record evidence specifically related to the issue under consideration." *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004). The Second Circuit has also considered and rejected the proposition that an "adverse credibility determination with respect to some of an alien's claims . . . necessarily infects related but essentially freestanding claims made by the same applicant in the course of the same petition." *Paul v. Gonzales*, 444 F.3d 148, 154 (2d Cir. 2006). In *Paul*, the Second Circuit held a petitioner could prevail on a theory of future persecution, despite an adverse credibility ruling regarding past persecution, so long as the factual predicate of the future persecution claim was independent of the testimony the IJ found not credible. *Id*.; *see also Gebreeyus v. Gonzales*, 482 F.3d 952, 955 (7th Cir. 2007) (adopting the holding from *Paul* that an adverse credibility determination did not control a claim of future persecution based on independent facts).

There are sound reasons for requiring that each asylum claim be considered on its merits. First, immigration cases involve uniquely difficult problems of proof. *See Singh v. Holder*, 638 F.3d 1264, 1270 (9th Cir. 2011) ("Asylum cases differ from ordinary civil cases in that the events happen in foreign countries, and the expense and difficulty of obtaining corroboration can be overwhelming."); *Sangha v. INS*, 103 F.3d 1482, 1487 (9th Cir. 1997) ("Because asylum cases are inherently difficult to prove, an applicant may establish his case through his own testimony alone." (citation omitted)). Second, immigration claims are also notorious for involving long delays. The 2013 data from Syracuse

University's Transactional Records Access Clearinghouse shows that Immigration Court proceedings—not including appeals—took an average of 580 days from filing to completion.[2]  Given the amount of time that typically passes between filing an immigration petition and receiving a hearing, it is not surprising that inconsistencies are sometimes noted between an application and a petitioner's testimony. *Singh*, 439 F.3d at 1105 ("An IJ must also afford petitioners a chance to explain inconsistencies, and must address these explanations." (citations omitted)).  Petitioners may provide corroborating evidence where their testimony alone is deemed insufficient, but individuals who flee persecution are not always able to assemble corroborating documentation as they make their escape, and the logistical problems associated with trying to obtain corroborating documentation after the fact are easy to predict.

The majority cites the Second Circuit's decision in *Siewe v. Gonzales*, 480 F.3d 160 (2d Cir. 2007), and summarizes its holding as "an IJ's application of the maxim *falsus in uno, falsus in omnibus* . . . may at times be [correct]."  But what the Second Circuit actually held is that the application of the maxim "may at times be appropriate" to "discredit evidence that does not benefit from corroboration or authentication independent of the petitioner's *own* credibility" and to "influence the IJ's assessment of the credibility of the corroborative evidence itself."  *Id.* (emphasis in original). The Second Circuit went on to enumerate at least five

---

**[2]** *Immigration Court Processing Times by Charge*, TRAC Immigration, http://trac.syr.edu/phptools/immigration/court_backlog/court_proctime_charge.php (select "What to tabulate: Average Days," "Charge Type: Immigration," and "State: Entire US") (last visited Dec. 12, 2013).  Data computed by fiscal year.

categories in which application of the maxim is not appropriate in the immigration context: (1) a finding that the petitioner adduced false evidence does not excuse the assessment of evidence that is independently corroborated; (2) the presentation of fraudulent documents that were created to escape persecution (which, as the court noted, may actually tend to support an alien's application); (3) false evidence that is wholly ancillary to the alien's claim may be insufficient by itself to warrant a conclusion that the entirety of the alien's uncorroborated material evidence is false; (4) false statements made during an airport interview, depending on the circumstances, may not be a sufficient ground for invoking the maxim; and (5) an alien's submission of documentary evidence that the alien does not know, and has no reason to know, is inauthentic, is no basis for *falsus in uno. Id.* at 170–71. Even when none of these exceptions applies, *Siewe* at best endorses use of the maxim where testimony lacks corroboration or authentication. The rule announced today has a far greater sweep: if one asylum claim has inconsistencies deemed material, IJs will not need to consider alternative asylum claims at all. And on review, our court will have no way of knowing whether a petitioner produced corroboration or authentication in support of an alternative claim that was sufficient to overcome real or perceived inconsistencies in her evidence. There will be no findings to review.

Our pre-REAL ID Act case law recognizes the logistical difficulties inherent in immigration cases and established limitations on the types of inconsistencies that provide sufficient support for adverse credibility determinations. Assessing claims on their merits and requiring "independent, specific, and cogent" reasons for adverse credibility determinations as to each claim adheres to our circuit's pre-

REAL ID Act rule that adverse credibility determinations must be based only on inconsistencies that go to the heart of the petitioner's claim. This rule does nothing more than insure that each basis for asylum is given fair consideration. Here, it requires that whether or not Li was able to provide testimony or corroboration sufficient to convince the IJ that she had been the victim of persecution based on her religious beliefs, she was entitled to a merits ruling on her other asylum claim.

No court will determine whether Li is entitled to asylum as a refugee who was forced to undergo an abortion because the immigration courts addressed her religious persecution claim first, decided there were inconsistencies in her testimony that she was not able to sufficiently explain, and dismissed her forced abortion claim without ruling on its merits. But whether Li applied for a passport in response to being arrested for her home church activities, whether she was baptized in China, or had a good explanation for not being baptized in China, are all questions that have nothing to do with whether she was forced to undergo an abortion. As the majority acknowledges, these inconsistencies "do not touch upon her forced abortion claim." They certainly do not go to the heart of it.

Unfortunately, under the new rule announced today, many more applicants will see their asylum claims dismissed, as Li's was, without a merits ruling from any court.

## II. Conclusion

For the preceding reasons, I would grant the petition for review and remand this case for consideration of Li's asylum

claim based on forced abortion and her claim for withholding
of removal.